STATE of Minnesota, ex. rel. WACOUTA
TOWNSHIP, Respondent,

v.

BRUNKOW HARDWOOD CORPO-
RATION, a Wisconsin corpora-
tion, et al., Defendants,

Pepin Heights and Harbor,
Ltd., Appellant.

No. C1–93–1349.

Court of Appeals of Minnesota.

Dec. 28, 1993.

Steven S. Hoge, Arnold & McDowell, Minneapolis, Jack C. Strobel, Einar E. Hanson, Strobel & Hanson, P.A., Red Wing, James Utley, Anoka, for respondent.

George L. May, Barbara J. Hoekstra, Langlais, May & Schumacher, P.A., Hastings, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Scott R. Strand, Asst. Atty. Gen., St. Paul, for amicus State of Minnesota.

Considered and decided by AMUNDSON, P.J., and SCHUMACHER and FLEMING *, JJ.

## OPINION

SCHUMACHER, Judge.

Following a court trial, appellant Pepin Heights and Harbor, Ltd. (Pepin Heights) was permanently enjoined from destroying, disturbing, or impairing bald eagles or their roosts. Pepin Heights' motion for an amended judgment or a new trial was denied. We affirm.

## FACTS

In 1972, John Rachie acquired an option on 297 acres of land in Wacouta Township, Goodhue County, Minnesota. Rachie eventually purchased the land, along with another 140 acres in the same area. In 1985, the county board's approval of a plat plan resulted in the property being rezoned from agricultural to R–1 residential.

In 1989, Rachie sold undivided one-third interests in the property to Peter Bennedsen and Detlef Wratschko. All three then transferred their interests to Pepin Heights.

In January 1990, Rachie entered into a contract with Brunkow Hardwood Corporation. The contract, which was assigned to Pepin Heights, allowed Brunkow to harvest approximately 100 trees on the property. The previous year, however, the largest bald eagle winter roost site in Minnesota had been confirmed on the property.[1] When respon-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Roosts are trees in which eagles can safely rest during the evening hours.

dent State of Minnesota, ex rel. Wacouta Township became aware of the logging contract, it filed suit in an effort to protect the eagles and their roosts. Brunkow agreed not to log and was dismissed from the litigation.

At trial, Wacouta Township presented biologists who testified that, at least from November through March, there should be no human activity within 500 meters of the roosts. The biologists also testified that changes to the vegetation or terrain could disturb the eagles, regardless of when the changes occurred. The court concluded that the bald eagles and the roosts are a protected natural resource, and permanently enjoined Pepin Heights from taking any action within 500 meters of the roosts that would destroy, disturb, or impair the bald eagles or their roosts.

## ISSUES

1. Is this case moot?

2. Did Goodhue County's zoning action preclude the grant of an injunction?

3. Did the trial court err by enjoining Pepin Heights from destroying, disturbing, or impairing the bald eagles or their roosts?

4. Is Pepin Heights entitled to the appointment of condemnation commissioners?

## ANALYSIS

■ An appellate court applies de novo review to conclusions of law in an action brought under the Minnesota Environmental Rights Act (MERA), Minn.Stat. §§ 116B.01–.13 (1990). *State by Archabal v. County of Hennepin,* 495 N.W.2d 416, 420 (Minn.1993). Findings of fact will not be disturbed unless clearly erroneous. *Id.*

■ 1. Pepin Heights argues that there is no justiciable controversy because its logging contract with Brunkow has been canceled. The trial court, however, enjoined all activities that would potentially disrupt the eagles or the roost. Because logging was not the only issue before the trial court, cancellation of the contract did not render the case moot.

■ 2. Pepin Heights suggests that Goodhue County's rezoning of the property precluded the trial court from issuing an injunction with a contrary effect. A property owner must comply with both local zoning ordinances and MERA. *White Bear Rod & Gun Club v. City of Hugo,* 388 N.W.2d 739, 743 (Minn.1986); *see also State by Drabik v. Martz,* 451 N.W.2d 893, 896–97 (Minn.App. 1990) (temporary injunction under MERA proper in spite of county's contrary grant of conditional use permit), *pet. for rev. denied* (Minn. Apr. 25, 1990). The trial court's authority to issue the injunction was not preempted by Goodhue County's action.

■ 3. Pepin Heights contends the trial court erred by enjoining actions within 500 meters of the roots that would interfere with the eagles or the roosts. We disagree. First, Pepin Heights claims that Wacouta Township did not establish a prima facie case. There are two prongs to a prima facie case under MERA. First, there must be "a protectible natural resource." *State by Archabal,* 495 N.W.2d at 421. Second, the defendant's conduct must cause or be likely to cause "pollution, impairment or destruction of that resource." *Id.*

■ Under MERA, natural resources include "all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational and historical resources." Minn.Stat. § 116B.02, subd. 4 (1990). In general, MERA's definition of natural resources is presumed to be broad. *Minnesota Pub. Interest Research Group v. White Bear Rod & Gun Club,* 257 N.W.2d 762, 768 (Minn.1977). For example, birds may be classified as a natural resource. *Id.* at 769–70. A stand of trees may also be classified as a natural resource. *People for Envtl. Enlightenment & Responsibility (PEER), Inc. v. Minnesota Envtl. Quality Council,* 266 N.W.2d 858, 867 (Minn.1978). Similarly, the trial court in this case properly concluded that the bald eagles and the trees in which they roost are a natural resource within the scope of MERA. *See also County of Freeborn v. Bryson,* 297 Minn. 218, 228, 210 N.W.2d 290, 297 (1973) (marsh and wildlife it supports are natural resource).

■ Next, we consider whether the enjoined conduct was causing or was likely to cause pollution, impairment, or destruction of

the bald eagles or the roosts. *See State by Archabal,* 495 N.W.2d at 421 (conduct must be likely to pollute, impair, or destroy "that resource"). Almost every human activity has some kind of adverse impact on a natural resource. *West Mich. Envtl. Action Council, Inc. v. Natural Resources Comm'n,* 405 Mich. 741, 275 N.W.2d 538, 545 (1979), *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979). We cannot construe MERA as prohibiting virtually all human enterprise. *See State v. Neisen,* 415 N.W.2d 326, 329 (Minn.1987) (statutes should not be construed to lead to absurd results).

Moreover, a statute must be read and construed as a whole. *Van Asperen v. Darling Olds, Inc.,* 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958). Under MERA, an action may be brought "for the protection of * * * natural resources located within the state * * * from pollution, impairment, or destruction." Minn.Stat. § 116B.03, subd. 1 (1990). The statute further provides that "[p]ollution, impairment or destruction" includes "any conduct which materially adversely affects or is likely to materially adversely affect the *environment*." Minn.Stat. § 116B.02, subd. 5 (1990) (emphasis added). In other words, MERA protects natural resources from conduct that has or is likely to have a material adverse effect on the environment. *Bryson,* 297 Minn. at 225–26, 210 N.W.2d at 295–96. Thus, we must determine whether the conduct prohibited by the injunction had or was likely to have a material adverse impact on the environment.

MERA is modeled on the Michigan Environmental Protection Act, Mich.Comp. Laws §§ 691.1202–.1207 (1990). *PEER,* 266 N.W.2d at 866–67 n. 6. As a result, we generally construe MERA in accordance with the construction placed upon the Michigan act. *Id.* Michigan courts consider the following factors in determining whether an action's effect on a natural resource affects or is likely to affect the environment so as to justify judicial intervention:

(1) whether the natural resource involved is rare, unique, endangered, or has historical significance, (2) whether the resource is easily replaceable, (for example, by replanting trees or restocking fish), (3) whether the proposed action will have any significant consequential effect on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed), and (4) whether the direct or consequential impact on animals or vegetation will affect a critical number, considering the nature and location of the wildlife affected.

*City of Portage v. Kalamazoo Co. Rd. Comm'n,* 136 Mich.App. 276, 355 N.W.2d 913, 916 (1984). We adopt this test for use in determining whether the second prong of a prima facie MERA case has been established; that is, whether actual or likely pollution, impairment, or destruction of a natural resource has or is likely to have a material adverse effect on the environment. In doing so, we note that while all four factors should be considered, the weight given to each factor and the potential impact of the proposed action will depend in large part on the type and characteristics of the resource involved in the specific case. *Id.*

The record in this case amply supports the trial court's findings of fact, and we apply the *City of Portage* test in light of those findings. *See Northern States Power Co. v. Lyon Food Prod., Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975) (findings of fact must be upheld if reasonably supported by the evidence). As we have explained, the trial court properly concluded that the bald eagles and the roosts were a natural resource. The question remains whether pollution, impairment, or destruction of the eagles or the roosts was likely to have a material adverse effect on the environment. We hold that it was.

First, the trial court found that bald eagles are a threatened species, and the testimony fully supports a concomitant finding that they are rare. The court also found that the roosts' topography, maturity, and proximity to feeding areas make them uniquely suited to function as a habitat for eagles.

Second, the roost's congruence of qualities derives in large part from its geographic location. Hence, it would be difficult, if not impossible, to create another roost site that would provide the same level of protection for the eagles.

Third, the trial court found that interference with the roosts would have a significant effect on the eagles. Indeed, it is this consequential impact that lends much of the importance to the particular stand of trees at issue in this case.

Fourth, the trial court found that the enjoined activities were likely to have a material adverse effect on the eagles. Since bald eagles are a threatened species and this is the largest roost site in Minnesota, disturbing the roosts would obviously affect a critical number of eagles.

In short, the eagles and the roosts are rare, difficult to replace, interrelated, and constitute a critical number. It is clear that the effect of the enjoined activities on the eagles and the roosts was likely to have a material adverse effect on the environment.

■ Pepin Heights argues that it offered sufficient evidence to rebut this prima facie case. A prima facie case may be rebutted

> by the submission of evidence to the contrary. The defendant may also show, by way of an affirmative defense, that there is no feasible and prudent alternative and the conduct at issue is consistent with and reasonably required for promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction. Economic considerations alone shall not constitute a defense hereunder.

Minn.Stat. § 116B.04 (1990). That is, once a prima facie case has been established, the defendant must either rebut the prima facie case or affirmatively defend by demonstrating that no feasible and prudent alternative exists, and that its actions will promote the public health, safety, or welfare, other than economically. *PEER,* 266 N.W.2d at 867. A defendant must overcome an "extremely high burden" in order to establish an affirmative defense. *State by Archabal,* 495 N.W.2d at 423.

Pepin Heights has offered no evidence to rebut the testimony of the biologists presented by Wacouta Township. Nor has it offered any evidence that the enjoined conduct will promote the public health, safety, or welfare in any noneconomic fashion.

■ Finally, Pepin Heights claims that the scope of the injunction is not supported by the evidence. A trial court may issue an injunction that "provides an adequate remedy without imposing unnecessary hardship on the enjoined party." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 93 n. 6 (Minn.1979). Wacouta Township presented expert testimony concerning the location of the roost. The experts also testified that the only adequate remedy was to prevent physical changes to the environment within 500 meters of the roost. Those are the actions the trial court enjoined. Furthermore, a party suffers no unnecessary hardship simply because it is enjoined from taking action prohibited by MERA. *Cf.* Minn.Stat. § 116B.03, subd. 1 (declaratory or equitable relief may be granted to protect natural resources). The trial court properly concluded that Wacouta Township established a prima facie case and that Pepin Heights did not rebut this case and granted injunctive relief that is supported by the record.

■ 4. Pepin Heights contends that it is entitled to compensation because the injunction prohibits all economically beneficial use of the property. Wacouta Township claims this issue was waived. The record does not clearly show whether, when, or how the condemnation issue was raised before, or decided by, the trial court. In any event, Pepin Heights has not waived its right to seek an appropriate writ of mandamus.[2] *See Wilson v. Ramacher,* 352 N.W.2d 389, 394–95 (Minn. 1984) (failure to specifically allege inverse condemnation did not deny right to raise claim); *State v. McAndrews,* 286 Minn. 115, 117, 175 N.W.2d 492, 493 (1970) (failure to consolidate all property in one condemnation proceeding does not waive right to initiate new proceeding); *Stenger v. State,* 449

2. We do not reverse and remand on this question only because no ruling or judgment in the record formally addresses the compensation issue.

N.W.2d 483, 484 (Minn.App.1989) (writ of mandamus is proper method of bringing action for inverse condemnation), *pet. for rev. denied* (Minn. Feb. 28, 1990); *Davis v. City of Princeton,* 401 N.W.2d 391, 398 (Minn. App.1987) (failure to object before government action takes effect does not waive takings claim). While we offer no opinion on the merits of its claim, Pepin Heights retains the right to pursue inverse condemnation proceedings.

## DECISION

The case is not moot. The trial court had the authority to grant an injunction. The trial court did not err by concluding that Wacouta Township established a prima facie case and that Pepin Heights failed to rebut the prima facie case or in defining the scope of the injunction. Pepin Heights has not waived its right to seek inverse condemnation.

**Affirmed.**