STATE of Minnesota ex rel. SWAN LAKE AREA WILDLIFE ASSOCIATION, relator, Appellant,

v.

NICOLLET COUNTY BOARD OF COUNTY COMMISSIONERS, Respondent,

v.

Marlin Fitzner, et al., intervenors, Respondents,

v.

Minnesota Department of Natural Resources, third party defendant, Respondent.

No. A10–1025.

Court of Appeals of Minnesota.

May 23, 2011.

William G. Peterson, Peterson Law Office, P.A., Bloomington, MN, and Garry D. Barnett, Barnett Law, Ltd., Mankato, MN, for appellant.

Scott T. Anderson, Scott E. Schraut, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent Nicollet County Board of County Commissioners.

Gerald W. Von Korff, Kurt A. Deter, Rinke Noonan, St. Cloud, MN, for respondents Marlin Fitzner, et al.

Lori Swanson, Attorney General, Jill Schlick Nguyen, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Natural Resources.

Considered and decided by JOHNSON, Chief Judge; SHUMAKER, Judge; and RANDALL, Judge.*

## OPINION

JOHNSON, Chief Judge.

The Swan Lake Area Wildlife Association commenced this action eight years ago

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

with the goal of increasing the depth of two lakes in Nicollet County—Little Lake and Mud Lake—to foster better wildlife habitats. The case is before the court of appeals for the third time. In our second opinion, we affirmed the district court's judgment in favor of the association based on the conclusion that Nicollet County violated the Minnesota Environmental Rights Act. We also held in our second opinion that the district court is authorized to fashion an equitable remedy that sets the crest elevation of the lakes, notwithstanding the county's statutory authority to regulate ditches and the statutory authority of the Department of Natural Resources to regulate public waters.

On remand, the district court ordered the county to repair a dam so that the two lakes would achieve a crest elevation of 973 [1] feet above sea level. This elevation is three feet lower than the elevation sought by the association. The association argues on appeal that the district court erred by issuing injunctive relief that would ensure a crest elevation of only 973 feet, not 976 feet. We conclude that the district court did not abuse its discretion when awarding injunctive relief and, therefore, affirm.

## FACTS

Our second opinion in this case contains a thorough recitation of the basic facts and procedural history of the case prior to this appeal. *See State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Cnty. Comm'rs*, 771 N.W.2d 529, 531–34 (Minn.App.2009) (*Swan Lake II*); *see also State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Cnty. Comm'rs*, 711 N.W.2d 522 (Minn.App.2006) (*Swan Lake I*), *review denied* (Minn. June 20, 2006). We need not repeat those facts but will merely supplement them as necessary for an understanding of the issues in this appeal.

The association is "a non-profit corporation organized to promote wildlife habitat protection, wildlife production and recreational hunting" in and near Nicollet County. In our second prior opinion, we affirmed the district court's conclusion that the county violated the Minnesota Environmental Rights Act (MERA) by failing to repair a broken dam,[2] which caused Little Lake and Mud Lake to drain and thereby reach low depths. *Swan Lake II*, 771 N.W.2d at 533–34. We reversed the district court's conclusion that it did not have the power to determine the dam's crest elevation, *id.* at 537, which "is the

1. The district court and the parties sometimes refer to an elevation of 973.2 feet above sea level and sometimes refer to an elevation of 973.8 feet above sea level. The parties informed the court at oral argument that the two elevations are, for practical purposes, the same. For the sake of simplicity, we usually refer to both elevations as 973 feet. The difference between them is due to the fact that the elevation of the lakes depends in part on the width of the dam. In 1950, the original dam, approximately nine feet in width, was installed at a crest elevation of 973.2 feet above sea level. In 1972, the DNR permitted a wider dam of approximately 25 feet in width at a crest elevation of 973.8 feet above sea level. The district court's order requiring a dam elevation of 973.8 feet above sea level

effectively achieves a crest elevation in the lakes of 973.8 feet above sea level.

2. We use the term "dam" even though the structure described is considerably smaller and simpler than most dams. The photographic exhibits depict a dilapidated structure consisting of a piece of sheet metal secured to the earth with two vertical steel posts. It is not difficult to imagine how the dam deteriorated over time. The district court and the parties alternatively refer to the dam as a "weir," "outlet control structure," "outlet dam," or simply "dam." In *Swan Lake II*, we characterized the structure as a "dam," and we will continue to do so in this opinion. *See* 771 N.W.2d at 532.

height at which the lake begins to flow over a dam," *id.* at 532. We remanded the case to the district court to set an "appropriate crest elevation." *Id.* at 537.

On remand, the association sought a crest elevation of 976 feet because that elevation would attract and support water fowl. The county, the Department of Natural Resources (DNR), and intervening landowners who own property near the lakes sought a crest elevation of 973 feet. A crest elevation of 973 feet is consistent with a 1972 permit issued by the DNR to the county, which would have allowed the county to repair the dam at that level. But the county never made the repairs, thus exposing itself to liability under MERA.

The district court summarized *Swan Lake I* by quoting the opinion's holding: "In light of the broad language of Minn. Stat. § 116B.12, we conclude that the district court has subject matter jurisdiction over [the association's] MERA claim regardless of the administrative processes and remedies available under the drainage provisions of Minn.Stat. §§ 103E.055–.812." 711 N.W.2d at 525–26. The district court also quoted the holding of *Swan Lake II:* "[I]t is well within the district court's authority to set the dam's crest elevation in order to raise the lakes' water levels to protect them as natural resources." 771 N.W.2d at 537. The district court concluded its recitation of *Swan Lake I* and *Swan Lake II* by stating: "The law of the case is that this Court is obligated to set the lake level, and that is an obligation that will be discharged consistent with the decisions from the Court of Appeals, as well as with statutory and other case law."

With respect to the appropriate remedy, the district court was persuaded by the arguments of the county, the DNR, and the intervening landowners. The district court reasoned that 973 feet would remedy the MERA violation caused by the county's failure to repair the dam. The district court rejected the association's proposed remedy of a 976–foot elevation. The district court gave considerable deference to the positions of the county and the DNR, which argued for a crest elevation of 973 feet, because those entities maintain authority over water drainage and public waters pursuant to other statutory schemes. The district court also reasoned that it "should [not] attempt to go back and try to recreate the wetlands as they existed before there was any man-made drainage at all." The district court further reasoned that an elevation of 976 feet "would result in harm to the Intervernors and others in the surrounding area well beyond the remedy that MERA appropriately provides in this particular circumstance" because it would result in widespread flooding, which "is an undue and unwarranted hardship to impose on area landowners." Accordingly, the district court issued an order that requires the county to repair the dam so that it has a crest elevation of 973 feet above sea level. The association appeals.

## ISSUE

Did the district court abuse its discretion by awarding injunctive relief that requires Nicollet County to establish a crest elevation of 973 feet above sea level for Little Lake and Mud Lake as an equitable remedy for the county's violation of the Minnesota Environmental Rights Act?

## ANALYSIS

The association argues that the district court erred by awarding injunctive relief in the form of an order requiring the county to establish a crest elevation of 973 feet instead of 976 feet. A district court's award of injunctive relief is an exercise of its equitable powers. *Borom v. City of St.*

*Paul,* 289 Minn. 371, 376, 184 N.W.2d 595, 598 (1971). A district court has broad discretion when fashioning an equitable remedy. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979). This court will reverse a district court's equitable remedy only if the district court abuses its discretion. *City of North Oaks v. Sarpal,* 797 N.W.2d 18, 23 (Minn.2011) (citing *Nadeau,* 277 N.W.2d at 524). A district court abuses its discretion if "its decision is against the facts in the record" or if its "ruling is based on an erroneous view of the law." *Id.* (citations omitted).

### A.

The legislature enacted the Minnesota Environmental Rights Act based on the following legislative findings:

> The legislature finds and declares that each person is entitled by right to the protection, preservation, and enhancement of air, water, land, and other natural resources located within the state and that each person has the responsibility to contribute to the protection, preservation, and enhancement thereof. The legislature further declares its policy to create and maintain within the state conditions under which human beings and nature can exist in productive harmony in order that present and future generations may enjoy clean air and water, productive land, and other natural resources with which this state has been endowed. Accordingly, it is in the public interest to provide an adequate civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction.

Minn.Stat. § 116B.01 (2010); *see also* 1971 Minn. Laws. ch. 952, § 1 at 2011–12.

The civil remedy authorized by the legislature is a civil action "for declaratory or equitable relief in the name of the state of Minnesota against any person, for the protection of air, water, land, or other natural resources located within the state, whether publicly or privately owned, from pollution, impairment, or destruction." Minn.Stat. § 116B.03, subd. 1 (2010). The phrase "pollution, impairment, or destruction" is defined by statute to mean, first,

> any conduct by any person which violates, or is likely to violate, any environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit of the state or any instrumentality, agency, or political subdivision thereof which was issued prior to the date the alleged violation occurred or is likely to occur,

or, second, "any conduct which materially adversely affects or is likely to materially adversely affect the environment." Minn. Stat. § 116B.02, subd. 5 (2010); *see also State ex rel. Schaller v. County of Blue Earth,* 563 N.W.2d 260, 267 (Minn.1997) (adopting five non-exclusive factors to determine whether activity "materially adversely" affects environment).

If a plaintiff proves a violation of MERA, the district court "may grant declaratory relief, temporary and permanent equitable relief, or may impose such conditions upon a party as are necessary to protect the air, water, land or other natural resources located within the state from pollution, impairment, or destruction." Minn.Stat. § 116B.07 (2010); *see also Minnesota Pub. Interest Research Group v. White Bear Rod & Gun Club,* 257 N.W.2d 762, 764, 783 (Minn.1977) (affirming injunction prohibiting gun club from opening trap- and skeet-shooting facility); *Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc.,* 624 N.W.2d 796, 806–07 (Minn.App.2001) (affirming permanent injunction preventing operation of shooting range).

A district court possesses the authority to issue an injunction that "provides an adequate remedy without imposing unnecessary hardship on the enjoined party." *State ex rel. Wacouta Twp. v. Brunkow Hardwood Corp.*, 510 N.W.2d 27, 31 (Minn.App.1993) (quoting *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 93 n. 6 (Minn.1979)). Depending on the circumstances, a district court may grant a negative injunction, which restrains a party from an act, *see, e.g., Minnesota Pub. Interest Research Group*, 257 N.W.2d at 783, or an affirmative injunction, "which *commands the doing of some positive act by the defendant*," *see, e.g., Bellows v. Ericson*, 233 Minn. 320, 325–26, 46 N.W.2d 654, 658 (1951). In either event, the issuance of an injunction "is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, —— U.S. ——, ——, 130 S.Ct. 1803, 1816, 176 L.Ed.2d 634 (2010). "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944)).

We take as given the holdings announced in our prior opinions in *Swan Lake I* and *Swan Lake II* because those opinions reflect the law of the case. *See Sigurdson v. Isanti Cnty.*, 448 N.W.2d 62, 66 (Minn.1989). Specifically, it has been established that the county violated MERA by failing to maintain and repair the dam. *Swan Lake II*, 771 N.W.2d at 533–34. It also has been established that the district court is authorized to issue affirmative injunctive relief to remedy the county's violation of MERA. *Id.* at 537; *cf. Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 747 (8th Cir.2004); *Werlein v. United States*, 746 F.Supp. 887, 898 (D.Minn.1990), *vacated in part on other grounds*, 793 F.Supp. 898, 900 (D.Minn. 1992). And it has been established that the district court is empowered to set the crest elevation of the dam to remedy the MERA violation in this case despite the concurrent authority of the county and the DNR to regulate drainage ditches and public waters, respectively. *Swan Lake II*, 771 N.W.2d at 538; *cf. Siewert v. Northern States Power Co.*, 793 N.W.2d 272, 283–86 (Minn.2011) (declining to apply primary jurisdiction doctrine).

### B.

In fashioning an equitable remedy to provide for a crest elevation of 973 feet, the district court noted the concurrent authority of the county and the DNR. The association contends that the county's authority to regulate ditches is not at issue in this appeal and that the district court should have considered only MERA and MERA caselaw when setting the crest elevation of the lakes.

The regulatory authority of the county and the DNR derives from two chapters of the Minnesota Statutes. The first is chapter 103E, which sets forth an extensive regulatory scheme related to drainage ditches. *See generally* Minn.Stat. §§ 103E.005 to .812 (2010). This scheme grants power to a county board or to a joint county drainage authority to act as a "drainage authority." Minn.Stat. § 103E.005, subd. 9. A drainage authority is empowered to issue orders to:

(1) construct and maintain drainage systems;

(2) deepen, widen, straighten, or change the channel or bed of a natural wa-

terway that is part of the drainage system or is located at the outlet of a drainage system;

(3) extend a drainage system into or through a municipality for a suitable outlet; and

(4) construct necessary dikes, dams, and control structures and power appliance, pumps, and pumping machinery as provided by law.

Minn.Stat. § 103E.011, subd. 1; *see also In re Improvement of Murray Cnty. Ditch No. 34*, 615 N.W.2d 40, 49 (Minn.2000) (affirming county drainage authority's determination of statutory cost-benefits requirements); *Petition of Zimmer*, 359 N.W.2d 266, 271 (Minn.1984) (reversing county board's order to repair ditch that did not comply with statutory requirements).

■ The second chapter is chapter 103G, which gives the DNR authority over the state's public waters and certain issues related to public waters. *See generally* Minn.Stat. §§ 103G.001 to .801 (2010). The DNR's authority over water-related issues includes wetland drainage, the establishment and control of water levels, and construction and maintenance of dams. *See* Minn.Stat. §§ 103G.221–.2372 (wetlands), 103G.401–.415 (water levels), 103G.501–.575 (dams); *see also State Dep't of Natural Resources v. Olson*, 275 N.W.2d 585, 587 (Minn.1979) (concluding that lake may be drained only if permitted by DNR); *Pelican Group of Lakes Improvement Dist. v. Minnesota Dep't of Natural Resources*, 589 N.W.2d 517, 519 (Minn.App.1999) (stating that DNR commissioner is entitled to deference when reviewing permit to change course of public waters). The DNR may grant a drainage authority permission to perform work related to public waters, including work related to dams, water levels, and drainage. Minn.Stat. § 103E.011, subd. 3(a);

*see also Minnesota Ctr. for Envtl. Advocacy v. Big Stone Cnty. Bd. of Comm'rs*, 638 N.W.2d 198, 203 (Minn.App.2002) (holding that county board must have DNR's permission or permit to repair ditch affecting public waters), *review denied* (Minn. Mar. 27, 2002).

The intertwining nature of the respective powers of the county, the DNR, and the district court is illustrated by the history of Little Lake and Mud Lake. In 1906, landowners near the lakes petitioned the county to construct a drainage ditch. In 1907, the county ordered the construction of County Ditch No. 46, which runs from Mud Lake to Little Lake. *See Swan Lake I*, 711 N.W.2d at 524. In 1949, landowners petitioned the county to improve and enlarge County Ditch No. 46 to increase the flow of water through the ditch. In 1950, the Department of Conservation, the predecessor of the DNR, approved an engineer's report concerning the county's proposed improvements to the ditch, and the county thereafter approved the petition to improve the ditch. Those improvements were completed by 1953, resulting in a dam at 973 feet. *Id.*

The dam, however, began to deteriorate in the 1960s. When the dam needed attention, the county and the DNR became involved. In 1971, the county applied to the DNR for a permit to build a replacement dam. The DNR approved the county's application in 1972, authorizing the construction of a new dam at 973 feet. *Id.* The county made improvements to the ditch but did not build the dam. In the mid–1990s, the county, the DNR, and nearby landowners discussed the need for a dam but did not agree on its elevation. In 2003, the association commenced this action.

In light of the powers created by chapters 103E and 103G, and in light of the county's and the DNR's prior involvement

in Little Lake and Mud Lake, the district court wisely fashioned an equitable remedy that is consistent with and respectful of the concurrent regulatory powers of the county and the DNR. This plainly is not a situation in which the legislature intended MERA to preempt or displace other statutory schemes that serve related purposes. This is evident from the text of MERA itself: "The rights and remedies provided herein shall be in addition to any administrative, regulatory, statutory, or common law rights and remedies now or hereafter available." Minn.Stat. § 116B.12 (2010). In addition, the district court's award of equitable relief achieved harmony between and among chapters 103E, 103G, and 116B. By doing so, the district court complied "with the general policy of statutory construction ... of harmonizing statutes dealing with the same subject matter." *People for Envtl. Enlightenment and Responsibility (PEER), Inc. v. Minnesota Envtl. Quality Council*, 266 N.W.2d 858, 866 (Minn.1978) (harmonizing MERA with Power Plant Siting Act). The district court was appropriately reluctant to award relief that would be inconsistent with actions previously taken by an executive-branch department and a unit of local government. *See Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 316 (Minn.2006). For these reasons, the district court's decision to achieve a crest elevation of 973 feet was a proper exercise of its discretion to fashion an equitable remedy.

### C.

In fashioning its equitable remedy, the district court also reasoned that it was not required by MERA to "recreate the [lakes] as they existed before there was any man-made drainage at all." The association contends that the district court erred by setting the crest elevation at 973 feet because that elevation will not restore the lakes to their natural conditions. In response, the county argues that adopting the association's proposed elevation of 976 feet would amount to an improper retroactive application of MERA because the lakes did not have such an elevation when MERA became effective or at any time since then. The association does not dispute that it seeks to restore the lakes to a state that existed before the enactment of MERA.

A statute is not given retroactive effect "unless clearly and manifestly so intended by the legislature." *Lickteig v. Kolar*, 782 N.W.2d 810, 818 (Minn.2010) (quotation omitted). To apply retroactively, a statute's language must contain "clear[ ] evidence of retroactive intent," such as the use of the word "retroactive." *Duluth Firemen's Relief Ass'n v. City of Duluth*, 361 N.W.2d 381, 385 (Minn.1985). Whether a statute applies retroactively is a question of law, to which we apply a *de novo* standard of review. *See Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 415–16 (Minn.2002).

Neither this court nor the supreme court has considered a case in which a party sought to apply an environmental statute retroactively by restoring real property to a condition that existed only before the effective date of the statute. *Cf. United States v. Northeastern Pharm. & Chem. Co., Inc.*, 810 F.2d 726, 732–33 (8th Cir.1986) (permitting retroactive application of federal environmental statute for clean-up of hazardous waste released before statute's effective date). Accordingly, we must rely on MERA's text. The language of MERA does not contain clear evidence of retroactive intent. *See Duluth Firemen's Relief Ass'n*, 361 N.W.2d at 385. The statute does not expressly state that it applies retroactively. Furthermore, the language of the statute suggests that the

legislature intended the statute to be applied only prospectively to preserve then-existing natural resources, not to restore natural resources to what they once were. The legislature provided that civil actions may seek declaratory or equitable relief for the "protection" of natural resources from "impairment" or "destruction." Minn.Stat. § 116B.03, subd. 1. To "protect" means to "keep from being damaged ... or injured." *The American Heritage College Dictionary* 1099 (3d ed.1997). The statute does not clearly indicate an intent to restore or recreate natural resources that did not exist when the statute was enacted.[3]

The legislature enacted MERA in 1971, and it became effective on August 1, 1971. *See* 1971 Minn. Laws ch. 952, at 2011–19; Minn.Stat. § 645.02 (2010). Accordingly, the district court's power to award equitable relief was limited to the equitable remedy necessary to return Little Lake and Mud Lake to a condition that existed on August 1, 1971, or thereafter. In light of the evidence in the record and the district court's finding that 976 feet was the "ordinary high water mark that preexisted Ditch 46A," the association's sought-after remedy would have brought about an improper retroactive application of MERA. *See Swan Lake II,* 771 N.W.2d at 532–33 (detailing history of county and DNR modifications to lakes dating back to 1907).

### D.

■ In fashioning its equitable remedy, the district court also reasoned, in part, that a crest elevation of 976 feet would result in widespread flooding, which would be "an undue and unwarranted hardship to impose on area land owners." The district court further reasoned that such flooding "would result in harm to the Intervernors and others in the surrounding area well beyond the remedy that MERA appropriately provides in this particular circumstance." On appeal, the association contends that a crest elevation of 976 feet would provide three feet of water in the lakes year-round, which "will provide the environmental amenities that most closely approximate the natural conditions of Little Lake and Mud Lake."

■ An injunction to resolve a MERA violation is permissible if it "provides an adequate remedy without imposing unnecessary hardship on the enjoined party." *Wacouta Twp.,* 510 N.W.2d at 31 (quoting *Cherne Indus., Inc.,* 278 N.W.2d at 93 n. 6). The evidence in the trial record supports the district court's finding that setting the crest elevation at 976 feet would impose hardship on nearby property owners. An internal DNR memorandum from 1991 indicates that raising the crest elevation to 974.8 feet would result in flooding to nearby private land. Testimony of the memorandum's author, Dennis Simon, buttressed the point. Simon testified that raising the crest elevation further to 976 feet would cause flooding in areas that surround Little Lake and "would have a significant adverse impact on tillable cropland." Geoff Griffin, a water resources

**3.** This is true notwithstanding the legislative finding that "each person is entitled by right to the ... enhancement" of the state's natural resources. Minn.Stat. § 116B.01. The scope of a district court's remedial powers under MERA is narrower than this statement of general policy because the word "enhancement" is absent from MERA's remedial provisions. A party may commence a civil action under MERA "for *the protection of* air, water, land, or other natural resources." Minn.Stat. § 116B.03, subd. 1 (emphasis added). And in granting relief under MERA, a district court "may impose such conditions upon a party as are necessary *to protect* the air, water, land or other natural resources." Minn.Stat. § 116B.07 (emphasis added). Neither of these MERA provisions relating to remedies uses the word "enhancement" or any similar concept.

engineer and former DNR employee, testified that he developed hypothetical models with a dam set at 974.8 feet. Griffin testified that such an elevation would cause a 148–acre area of land west of Mud Lake to be "inundated with water." An aerial photograph on which Griffin's estimates have been overlaid indicates that the 148–acre area is primarily comprised of farmland. Marlin Fitzner, who owns the 148 acres that would be flooded, testified that, given Griffin's estimates, he would "lose half of [his] farm." The association's counsel conceded at oral argument that farmland in the lake basin would be subject to "reflooding" if the crest elevation were set at 976 feet. The association's counsel further conceded that at least one home would be within the area subject to reflooding.

■ Our caselaw is concerned with whether a MERA remedy would impose unnecessary hardship "on the enjoined party." *Wacouta Twp.*, 510 N.W.2d at 31. In this case, the enjoined party is the county. The district court was concerned not only with the interests of nearby property owners but also with the county's potential liability toward them. The district court reasoned that if the crest elevation were set at 976 feet, that remedy likely would trigger compensable takings of those properties. As the constitution provides, "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. 1, § 13. "The purpose of the Takings Clause is to ensure that the government does not require some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 632 (Minn.2007) (quotations omitted).

■ The association and the county dispute whether reflooding on nearby properties would give rise to valid takings claims. It is unclear whether a property owner acquires an interest in a lake bottom when lake waters recede, or whether a compensable taking occurs when such property is intentionally reflooded. The association has cited cases suggesting that the intentional reflooding of dry lake beds is not a compensable taking. *See State ex rel. Anderson v. District Court of Kandiyohi Cnty.*, 119 Minn. 132, 136, 137 N.W. 298, 299–300 (1912); *Stenberg v. County of Blue Earth*, 112 Minn. 117, 120–21, 127 N.W. 496, 497 (1910). But those cases predate MERA by decades and may be inconsistent with modern takings law. The DNR cites more-recent cases that consider MERA and suggest or assume that a compensable taking would arise from the association's sought-after remedy. *See, e.g., PEER, Inc.*, 266 N.W.2d at 869. We need not reconcile these cases, however, because a district court retains the discretion to balance an enjoined party's potential takings liability against MERA's goals. In light of the evidence in the record, as well as general principles of takings law, the district court reasonably considered, as one relevant factor, the county's potential liability toward the owners of property that would be reflooded.

### E.

■ The association makes three additional arguments that have yet to be analyzed. First, the association contends that the district court erred by failing to comply with the mandate of *Swan Lake II*. The association asserts that this court's remand instructions are found in our statement that "it is well within the district court's authority to set the dam's crest elevation in order to raise the lakes' water levels to protect them as natural resources." *Swan Lake II*, 771 N.W.2d at 537. The association contends that the

district court did not follow these remand instructions because the district court did not protect the lakes "as natural resources."

After an appellate court has remanded a case, a district court must abide by the appellate court's mandate "strictly according to its terms" and "has no power to alter, amend, or modify" the mandate. *Halverson v. Village of Deerwood,* 322 N.W.2d 761, 766 (Minn.1982). But "district courts are given broad discretion to determine how to proceed on remand, as they may act in any way not inconsistent with the remand instructions provided." *Janssen v. Best & Flanagan, LLP,* 704 N.W.2d 759, 763 (Minn.2005). In *Swan Lake II,* we remanded to the district court for "the determination of the appropriate crest elevation," and we stated that the district court should make that determination "in accordance with MERA and applicable precedent." 771 N.W.2d at 537. The district court did not fail to abide by these remand instructions.

Second, the association contends that the district court erred by characterizing the MERA violation as the county's failure to repair the dam, rather than the county's inaction that led to the draining of Little Lake and Mud Lake. The nature of the MERA violation was decided by the district court in 2007, adopted by the district court in a subsequent order, and affirmed by this court. *See id.* In *Swan Lake II,* we affirmed the district court's conclusion that the county was liable for violating MERA by failing to repair the dam. *Id.* at 538. In the memorandum accompanying its most recent order, the district court reframed the issue as whether the county's neglect of the dam constituted a violation of MERA. The district court did not mischaracterize the county's violation of MERA.

Third, the association contends that the district court erred by not giving environmental factors "paramount" status when fashioning its equitable remedy. The association relies on *County of Freeborn ex rel. Tuveson v. Bryson,* 309 Minn. 178, 243 N.W.2d 316 (1976), in which the supreme court noted "a perceived legislative intent to subordinate the county's interest in highways to the state's paramount concern for the protection of natural resources." *Id.* at 179–80, 243 N.W.2d at 317. The association's argument is misplaced because the "state's paramount concern" for environmental protections is relevant only to a defendant's burden of proof on affirmative defenses to a MERA claim. Minn.Stat. § 116B.04 (2010). Affirmative defenses are not at issue in this appeal because the district court concluded in 2007 that the county had committed a MERA violation, and we affirmed that conclusion in *Swan Lake II.* 771 N.W.2d at 538. When determining an appropriate remedy for a MERA violation, a district court is required to balance the environmental concerns that MERA seeks to protect against the effects on the enjoined party to ensure that the remedy does not "impos[e] unnecessary hardship on the enjoined party." *Wacouta Twp.,* 510 N.W.2d at 31 (quoting *Cherne Indus., Inc.,* 278 N.W.2d at 93 n. 6). The district court did not err by not making the environment its "paramount concern" when determining the appropriate remedy for the county's violation of MERA.

In sum, the district court did not abuse its discretion by ordering the county to repair or construct a dam so as to achieve a water level of 973.8 feet.

**DECISION**

The district court did not abuse its discretion by ordering Nicollet County to es-

tablish a crest elevation of 973.8 feet above sea level for Little Lake and Mud Lake as an equitable remedy for the county's violation of the Minnesota Environmental Rights Act.

**Affirmed.**