*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0907**

In re the Estate of Oria Albert Brinkmeier, Deceased.

**Filed January 12, 2026**
**Affirmed**
**Larson, Judge**

McLeod County District Court
File No. 43-PR-23-312

Alan T. Tschida, Shoreview, Minnesota (for appellant Gail Brinkmeier)

Dustin J. McIntee, Kennedy & Ruhsam Law Offices, PA, Eagan, Minnesota (for respondent Gloria Pofahl)

Considered and decided by Connolly, Presiding Judge; Larson, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

In this probate dispute, appellant Gail Brinkmeier—the personal representative of the estate of Oria Brinkmeier (decedent)—argues the district court erroneously found a loan agreement existed between respondent Gloria Pofahl and decedent. Brinkmeier further asserts that, even if a loan agreement existed, Pofahl's claim against the estate was barred by the statute of limitations, or other statutes that require parties to reduce certain promises to writing. Finally, Brinkmeier argues, in the alternative, that the district court abused its discretion when it failed to reduce the amount the estate owed Pofahl. Because

the district court appropriately determined an enforceable loan agreement existed and acted within its discretion when it declined to further reduce the amount owed on the loan, we affirm.

**FACTS**

Decedent died testate in January 2023. Brinkmeier, decedent's daughter, was appointed personal representative of the estate. Approximately one year after decedent passed, Pofahl—decedent's younger sister—filed a claim against the estate for repayment of money she loaned decedent between 1991 and 1993. Brinkmeier disallowed the claim, and Pofahl challenged the disallowance in district court. Brinkmeier filed a motion for summary judgment. The district court denied the summary-judgment motion, and the case proceeded to a two-day bench trial.

At trial, Pofahl admitted she did not have a written loan agreement. Instead, to prove the existence of a loan agreement, Pofahl offered her testimony, copies of eight checks[1] she made out to decedent between 1991 and 1993 totaling $138,500, property records indicating decedent purchased four parcels of land between 1993 and 2003, and a will decedent executed in 2015 (2015 will).

Pofahl testified that she received $160,000 from divorce proceedings in 1989. Decedent asked if he could borrow some of the money to purchase land. Pofahl agreed and, between October 1991 and November 1993, loaned decedent $138,500. Over many years, Pofahl and decedent discussed ways decedent could repay the loan. Decedent first

---

[1] Copies of seven cancelled checks and a carbon copy of an eighth check were submitted into evidence as proof of the loan between Pofahl and decedent.

2

suggested repaying the loan with funds he received following his retirement in the summer of 1993. When that did not occur, decedent suggested he would repay Pofahl after he received money for serving as the executor of a friend's estate. After that did not occur, decedent executed the 2015 will which bequeathed 20 acres of land bordering the family farm (Brinkmeier farm) to Pofahl. Pofahl testified that decedent made the bequest to ensure the loan was repaid. Then, just before his passing, decedent executed a new will (2023 will), which removed decedent's bequest to Pofahl.[2]

The parties also offered evidence regarding other transactions between decedent and Pofahl during decedent's lifetime. First, Brinkmeier offered evidence regarding other financial transfers between decedent and Brinkmeier, including decedent's purchase of a van that was still titled in Pofahl's name. Second, Brinkmeier offered evidence that Pofahl received the Brinkmeier farm from decedent for no consideration. The records showed that, in 1999, decedent deeded the Brinkmeier farm to Pofahl and reserved a life estate for himself. Pofahl explained the property transfer in her testimony. According to Pofahl, decedent deeded her the Brinkmeier farm to acknowledge the care Pofahl provided their mother for nearly a decade. Pofahl provided daily care for their mother while raising her four children, staying at home during the day and working at night, from 1991 until mother's death in 1999.

Following the bench trial, the district court determined that Pofahl loaned decedent $138,500, which remained unpaid at the time of his death. The district court found that the

---

[2] In a separate but related proceeding prior to the bench trial, the district court confirmed that the 2023 will was validly executed and ordered it formally probated.

oral agreement did not have a specific repayment term, but Pofahl and decedent had multiple conversations on the subject. The district court found that Pofahl knew decedent included a bequest in his 2015 will to ensure she was repaid for the loan. And, in January 2024, just one year after Pofahl learned that decedent executed the 2023 will without that bequest, she filed a claim against the estate for repayment of the loan. The district court further determined that decedent deeded the Brinkmeier farm to Pofahl as repayment for "services provided by [Pofahl] to their mother." Thereafter, the district court allowed Pofahl's claim, but decreased the amount owed by the fair market value of the van.

Brinkmeier filed a motion to amend the district court's findings, or alternatively, to grant a new trial. The district court denied the motion for a new trial but amended one finding. The parties then stipulated that, based on the district court's decision, Pofahl's claim amount would be $390,266.90, the loan value plus interest, less the fair market value of the van.

Brinkmeier appeals.

## DECISION

Broadly, Brinkmeier raises four arguments on appeal. First, Brinkmeier challenges the district court's finding that a loan agreement existed between Pofahl and decedent that remained unpaid at the time of decedent's death. Second, Brinkmeier argues that—even if a loan agreement existed—Pofahl's claim was barred by a six-year statute of limitations. Third, Brinkmeier asserts that, even if a loan agreement existed that was not barred by a statute of limitations, Pofahl's claim fails because the loan agreement was not reduced to writing. Finally, Brinkmeier contends in the alternative that, even if there was an

4

enforceable loan agreement, the district court should have credited the estate for known transfers decedent made to Pofahl during his lifetime. We address each argument in turn.

**I.**

Brinkmeier challenges the district court's finding that Pofahl presented clear and convincing evidence of a loan agreement between herself and decedent that remained unpaid that the time of decedent's death. Whether a loan agreement existed between Pofahl and decedent is a factual finding. *See AFSCME, Councils 6, 14, 65 & 96, AFL-CIO v. Sundquist*, 338 N.W.2d 560, 567 (Minn. 1983); Minn. R. Civ. P. 52.01. We review a district court's factual findings for clear error. *In re Estate of Short*, 933 N.W.2d 533, 537 (Minn. App. 2019).

A factual finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). When applying the clear-error standard of review, we: (1) view the evidence in a light favorable to the findings; (2) do not reweigh the evidence; (3) do not find our own facts; and (4) do not reconcile conflicting evidence. *Id.* at 221-22. "When the record reasonably supports the findings at issue . . . it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted). Furthermore, we give due regard to a district court's credibility determinations. Minn. R. Civ. P. 52.01; *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

Here, we conclude the district court did not clearly err when it found Pofahl had a loan agreement with decedent that remained unpaid at the time of decedent's death. The

5

record amply demonstrates that decedent approached Pofahl following her divorce, seeking a loan so he could purchase land. Pofahl agreed and, between 1991 and 1993, wrote eight checks to decedent, totaling $138,500. The record establishes that between 1993—the year the final check was written—and 2003, decedent purchased four parcels of land. Through the years, Pofahl and decedent discussed options for repayment, but did not firmly agree on how the loan would be paid. And, at the time of his death, decedent had not repaid loan. Based on this evidence, the district court did not clearly err when it found a loan agreement existed between Pofahl and decedent that remained unpaid at the time of decedent's death.

Brinkmeier disagrees for four reasons. First, she argues the district court's finding that multiple conversations occurred between the parties regarding repayment is clearly erroneous because no testimony to this effect appears in the record. We disagree. The record contains Pofahl's testimony describing numerous conversations between Pofahl and decedent regarding repayment of the loan. Thus, the district court's finding is reasonably supported by the evidence in the record.

Second, Brinkmeier argues the district court clearly erred when it found Pofahl's testimony credible. But as stated above, credibility determinations ordinarily will not be disturbed on appeal. *See* Minn. R. Civ. P. 52.01 (stating that due regard is given to district court's opportunity to judge credibility of witnesses); *see also Wilson v. Wilson*, 11 N.W.3d 331, 337 (Minn. App. 2024) (stating that "[h]aving seen the live testimony, the district court is in the best position to assess the credibility of the witnesses"), *rev. denied* (Dec. 17, 2024). Here, we see no reason to disturb the district court's credibility determination.

6

Third, Brinkmeier cites *Hinkle v. Berg*, 194 N.W. 637 (Minn. 1923), to argue the district court clearly erred because it relied on the testimony of one witness to find a loan agreement existed between Pofahl and decedent. In *Hinkle*, husband sued his deceased wife's estate to prove an oral contract to make a will. 194 N.W. at 638. Husband claimed the decedent promised to devise property to her stepchildren. *Id.* The sole evidence supporting the claim was husband's testimony recounting a single conversation. *Id.* The supreme court held the evidence was insufficient to prove a contract to make a will. *Id.* *Hinkle* is distinguishable from this case. Pofahl brought a claim regarding a loan agreement, not an oral contract to make a will. Moreover, Pofahl's testimony is not "uncorroborated." Instead, Pofahl corroborated her testimony with the eight checks, evidence decedent purchased four properties, and the 2015 will.

Finally, Brinkmeier asks us to overturn the district court's finding by highlighting conflicting evidence in the record. But as explained above, "[w]hen the record reasonably supports" a district court finding, "it is immaterial that the record might also provide a reasonable basis for [an] inference[] and finding[] to the contrary." *See Kenney*, 963 N.W.2d at 223; *see also In re Welfare of Child(ren) of L.A.B.*, ___ N.W.3d ___, ___, No. A25-0952, 2025 WL 3510842, at *3 (Minn. App. Dec. 8, 2025) ("[A]n appellant who simply marshals record evidence pointing to alternative findings has not demonstrated clear error. The appellant must show that the record lacks the evidence necessary to support the findings the district court actually made.").

For these reasons, we conclude the district court's finding that an unpaid loan agreement existed between Pofahl and decedent was not clearly erroneous.

**II.**

Brinkmeier next argues that, even if a loan agreement existed, Pofahl's claim against

the estate was barred by a six-year statute of limitations. We review the district court's

findings regarding the terms of an oral contract for clear error, and the application of those

terms to a statute of limitations de novo. *See Powell v. MVE Holdings, Inc.*, 626 N.W.2d

451, 460 (Minn. App. 2001) (stating "the existence and terms of a contract are questions

for the fact finder" reviewed for clear error); *see also Sipe v. STS Mfg., Inc.*, 834 N.W.2d

683, 686 (Minn. 2013) (stating the "application of a statute of limitations" is reviewed de

novo).

Under Minnesota law, a cause of action "upon a contract or other obligation, express

or implied, as to which no other limitation is expressly prescribed" must be commenced

within six years. Minn. Stat. § 541.05, subd 1(1) (2024). The loan agreement between

Pofahl and decedent is a contract upon which no other limitation is expressly prescribed,

so we apply the six-year statute of limitations.[3]

Brinkmeier appears to contest the district court's finding that the loan agreement did

not have a firm repayment date. The district court found that decedent and Pofahl discussed

several potential repayment options, including a bequest in the 2015 will.[4] The district

---

[3] We note that the district court applied a different statute of limitations. But this does not affect our analysis. When addressing questions pertaining to a statute of limitations, we first determine which statute properly applies. *See Sipe*, 834 N.W.2d at 686 (citing *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 831 (Minn. 2011)). Here, we determine, and the parties agree, that Minn. Stat. § 541.05, subd. 1(1), applies to the loan agreement.
[4] Brinkmeier asserts that there is insufficient evidence that decedent acknowledged the debt "any time between 1993 and 2012." However, Brinkmeier fails to acknowledge that Pofahl specifically testified that she and decedent discussed repayment between 1999 and 2015.

court reasoned that "[a]lthough the terms of repayment changed over time, the 2015 [w]ill confirm[ed] a means of payment if the loan was not paid." And upon learning decedent had passed without any bequest to Pofahl in the 2023 will, Pofahl made a demand for repayment.

We conclude the district court's findings are not clearly erroneous and support the determination that the loan did not have a firm repayment date—meaning the loan was payable on demand.[5] Pofahl testified that she had numerous conversations with decedent about repayment, including decedent stating he would pay her from his retirement payout, from funds received after he served as executor, and through a devise in the 2015 will. The record further supports that Pofahl demanded repayment of the loan when she learned the loan would not be repaid during decedent's lifetime and the bequest of land had been removed when decedent executed the 2023 will.

Because the district court's findings regarding the terms of the loan agreement are reasonably supported by the evidence as a whole, we must apply those terms to assess whether Pofahl's claim was barred by the six-year statute of limitations. Our decision in *In re Estate of Dahle*, 384 N.W.2d 556 (Minn. App. 1986) is instructive.

---

[5] Brinkmeier asserts that the loan was not payable on demand and, instead, offers three dates the loan allegedly came due: (1) when Pofahl issued the first check in 1991; (2) when Pofahl issued the last check in 1993; or (3) when decedent retired in 1993. According to Brinkmeier, because the loan was due in either 1991 or 1993, Pofahl needed to commence her cause of action before 1997 or 1999. We conclude the district court did not clearly err when it rejected this articulation of the contract terms because the district court's decision that the loan agreement was payable on demand is reasonably supported by the evidence as a whole. *See Kenney*, 963 N.W.2d at 221.

There, the claimant made a series of loans to the decedent—her brother—between 1959 and 1966, secured by a promissory note and mortgage. *Dahle*, 384 N.W.2d at 557. Then, between 1967 and 1981, the claimant made a series of unsecured loans to the decedent. *Id*. at 558. In 1983, the claimant asked the decedent "for some money;" he informed her the money was "all used up." *Id*. And when the decedent died in 1984, the loans had not been repaid. *Id*. Thereafter, the claimant brought a claim against the decedent's estate. *Id*. The estate argued that the six-year statute of limitations in Minn. Stat. § 541.05, subd. 1(1) (1984),[6] barred the claim regarding the unsecured loans. *Id*. We disagreed, reasoning:

> [W]here the contract indicates the debt is payable only upon demand, the statute of limitations does not begin to run until actual demand is made. The demand must be made within a reasonable time, ordinarily six years or the period of the statute of limitations. But where the parties contemplate a delay in making the demand to some indefinite time in the future, the statutory period for bringing the action is not controlling. The evidence in this case indicates the parties contemplated an indefinite delay. [The claimant] lent [the decedent] money continuously over many years and apparently never made a demand for repayment until 1983. Her claim based upon the unsecured loans is therefore not barred.

*Id*. at 559 (citations omitted).

Applying *Dahle*, we conclude the six-year statute of limitations does not bar Pofahl's claim. As explained above, the district court found that, under the terms of the loan agreement, the loan was payable on demand. As such, like in *Dahle*, the parties

---

[6] The legislature has made no substantive changes to Minn. Stat. § 541.05, subd. 1(1), since 1984.

"contemplated an indefinite delay" in repayment. We further conclude Pofahl demanded repayment in a reasonable time. The record shows that until January 2023, Pofahl believed that she would be repaid through a bequest in the 2015 will. And, upon learning she would not receive that bequest, she expeditiously demanded repayment of the loan. Then, approximately one year after making that demand, she filed a claim against the estate for repayment of the loan. Accordingly, because Pofahl did not make a demand for repayment until one year before she filed her claim, her claim is not barred by the six-year statute of limitations.

In sum, the district court did not clearly err when it found the loan agreement was payable on demand. And because the record shows that, at the earliest, Pofahl demanded repayment one year before she filed her claim, her claim is not barred by the six-year statute of limitations.

**III.**

Brinkmeier next argues that the loan agreement is unenforceable because it was not reduced to writing, citing several statutes. *See* Minn. Stat. § 541.17 (2024); Minn. Stat. § 524.2-514 (2024); Minn. Stat. § 513.05 (2024). We are not persuaded that these statutes apply.

Beginning with section 541.17, a writing is required to enforce a subsequent promise to pay a debt that is barred by the statute of limitations. Thus, the statute only operates if the statute of limitations applies. For the reasons articulated above, Pofahl's claim was not barred by the statute of limitations. Accordingly, section 541.17 is inapplicable.

11

Moving to section 524.2-514, as relevant here, "[a] contract to make a will or devise, or not to revoke a will or devise . . . may be established only by . . . a writing signed by the decedent evidencing the contract." Applying this statute, Brinkmeier contends the loan agreement is unenforceable because there is no writing supporting the contention that decedent's bequeath of property to Pofahl in the 2015 will was to repay the loan. But Pofahl does not seek to enforce a contract to make a will, nor a promise not to revoke a devise. Instead, Pofahl seeks repayment of an oral loan agreement, and she only used the 2015 will as evidence that the loan agreement existed. Because Pofahl does not seek to enforce the terms in the 2015 will, section 524.2-514 is inapplicable.

Finally, section 513.05 provides that promises to convey real property must be in writing. Pofahl does not claim that she is entitled to real property. Pofahl claims that she had an oral loan agreement, and she is entitled to repayment. Therefore, the writing requirement in section 513.05 is inapplicable.

For these reasons, we conclude the loan agreement is enforceable, and none of the cited statutes required either the loan agreement or the discussions regarding repayment to be in writing.

**IV.**

Finally, Brinkmeier challenges the district court's decision not to credit other transactions between Pofahl and decedent during decedent's lifetime as payments towards the loan. Specifically, Brinkmeier disputes the district court's decision not to subtract the

12

fair market value of the Brinkmeier farm and alleged "known financial transfers" totaling $68,000 from the final amount the estate owed Pofahl.

The district court has "broad discretion when fashioning remedies." *Gabler v. Fedoruk*, 756 N.W.2d 725, 730 (Minn. App. 2008). A district court sitting in equity "may fashion equitable remedies based on the exigencies and facts of each case so as to accomplish justice." *Id.* (quotation omitted). We apply the abuse-of-discretion standard of review to a district court's equitable determination. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011). "A district court abuses its discretion if its ruling is against the facts in the record or if its decision is based on an erroneous view of the law." *State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty. Bd. of Comm'rs*, 799 N.W.2d 619, 625 (Minn. App. 2011) (quotation omitted).

We conclude the district court acted within its discretion when it did not credit the fair market value of the Brinkmeier farm toward the loan amount. The district court reasoned that decedent deeded the Brinkmeier farm to Pofahl in exchange for the care Pofahl provided their mother, not as a loan repayment. This finding is well supported by the evidence presented at trial, including: (1) that the transfer occurred in 1999—the year mother passed away; (2) Pofahl's testimony about the sacrifices she made to care for their mother for nearly a decade; and (3) after the transfer in 1999, the parties continued discussing various avenues for repaying the loan, suggesting the Brinkmeier farm did not satisfy the loan agreement.

With respect to the alleged $68,000 in other payments, the primary document Brinkmeier relies upon to support that amount was not submitted to the district court and,

therefore, is not in our record on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) ("An appellate court may *not* base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." (emphasis added); *see also* Minn. R. Civ. App. P. 110.01. And while there are a few checks in the record that document other transactions between Pofahl and decedent, many of the checks were made to pay for specific purchases (groceries and phone bills). And the few gratuitous checks in the record are quite minimal, totaling nowhere near $68,000. Based upon this record, the district court did not abuse its discretion when it did not reduce the amount the estate owed Pofahl by $68,000.

For these reasons, we conclude the district court did not abuse its discretion in the manner that it credited other transactions between Pofahl and the estate.

**Affirmed.**