STATE of Minnesota ex rel. SWAN LAKE AREA WILDLIFE ASSOCIATION, relator, Appellant,

v.

NICOLLET COUNTY BOARD OF COUNTY COMMISSIONERS, Respondent,

v.

Marlin Fitzner, et al., intervenors, Respondents,

v.

Minnesota Department of Natural Resources, third party defendant, Respondent.

No. A08–1739.

Court of Appeals of Minnesota.

Sept. 1, 2009.

Garry D. Barnett, Barnett Law, Ltd., Mankato, MN; and William G. Peterson, Peterson Law Office, Bloomington, MN, for appellant.

Scott T. Anderson, Kimberly K. Sobieck, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent Nicollet County Board of County Commissioners.

Gerald W. Von Korff, Kurt A. Deter, Rinke–Noonan, St. Cloud, MN, for respondents Fitzner, et al.

Lori Swanson, Attorney General, Thomas Overton, Jill Schlick Nguyen, Assistant Attorneys General, St. Paul, MN, for respondent Minnesota Department of Natural Resources.

Considered and decided by HALBROOKS, Presiding Judge; LANSING, Judge; and SHUMAKER, Judge.

## OPINION

SHUMAKER, Judge.

After a seven-day bench trial, the district court concluded that respondents Nicollet County Board of County Commissioners (County) and the Department of Natural Resources (DNR) were in violation of the Minnesota Environmental Rights Act (MERA) for permitting two wetlands to drain over the course of several decades. To remedy the violation, the district court ordered respondents to raise the primary lake's water level to a three-foot depth. However, the district court later amended its order because it was persuaded that the DNR had exclusive authority over the water levels of the state, and, therefore, it concluded that it was without jurisdiction to order a particular lake level as a remedy to the violation.

Because we held in a previous appeal of this case that the district court has subject-matter jurisdiction over this matter under MERA's plain language, we reverse the district court's determination that it is without jurisdiction to set a water level for the lakes, and remand for further proceedings to determine the appropriate crest elevation for the lake's dam. And although we conclude that the district court properly exercised jurisdiction over the DNR, we conclude that the DNR may not be held in violation of MERA for its decision not to force the County to repair the dam. Therefore, we also reverse the dis-

trict court's order holding the DNR liable under MERA. We affirm the remainder of the amended order.

## FACTS

This case concerns an ongoing dispute among several parties over the declining water levels of Little Lake and Mud Lake, both located in Nicollet County. Little Lake is a meandered lake[1] covering approximately 440 acres. Mud Lake is part of Little Lake's tributary watershed and is approximately the same size as Little Lake. Both lakes' water levels began to drop in the mid–1960s when a sheet pile dam located at the outlet of Little Lake fell into disrepair. This action began in 2003 when appellant Swan Lake Area Wildlife Association (Association) sued respondent County under MERA, alleging that the County had impaired a natural resource by neglecting to repair the dam and by allowing the lakes to drain. Respondent DNR was joined as third-party defendant, and respondent landowners intervened in the action.

In its amended request for relief, the Association asked that Little Lake's dam be set at a crest elevation of 976 feet above sea level.[2] The County moved to dismiss the action, arguing that the district court does not have subject-matter jurisdiction to consider the matter because the County is vested with exclusive authority over drainage decisions, which may only be challenged via administrative review pro-cesses. The district court denied the motion to dismiss, finding that it has subject-matter jurisdiction, and the County appealed.

In *State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet County Bd. of County Comm'rs*, we held that "the district court has subject matter jurisdiction over [the Association's] MERA claim regardless of the administrative processes and remedies available under the drainage provisions." 711 N.W.2d 522, 525–26 (Minn.App.2006), *review denied* (Minn. June 20, 2006) (*Swan Lake I*). We remanded to the district court, and the Honorable Judge Moonan presided over the trial.

At trial, the Association presented evidence detailing the history behind the draining of Little Lake and Mud Lake, which are characterized by the DNR as "Type 3" wetlands.[3] In 1907, the County approved the establishment of County Ditch 46A and authorized the dredging of Little Lake. A reviewing district court found that the deepest parts of Little Lake were approximately six feet in the wet season and three feet in the dry season, and approved of the partial draining of Little Lake (which would result from the dredging) because it was "no longer of sufficient depth and volume to be capable of any beneficial use of a substantial character for fishing, hunting, boating or public water supply." The district court affirmed the County's establishment of the ditch, which was constructed in 1908.

---

1. A meandered lake is "a body of water except streams located within the meander lines shown on plats made by the United States General Land Office." Minn.Stat. § 103G.005, subd. 11 (2008).

2. The crest elevation is the height at which the lake begins to flow over a dam.

3. This class of wetlands is made up of "inland shallow fresh marshes in which soil is usually waterlogged early during a growing season and often covered with as much as six inches or more of water. Vegetation includes grasses, bulrushes, spikerushes, and various other marsh plants such as cattails, arrowheads, pickerelweed, and smartweeds. These marshes may nearly fill shallow lake basins or sloughs, or may border deep marshes on the landward side and are also common as seep areas on irrigated lands." Minn.Stat. § 103G.005, subd. 17b (3) (2008).

In 1949, landowners petitioned the County to improve the ditch. The County conducted drainage-improvement proceedings, and as part of the drainage-improvement plan, it approved the installation of a sheet pile dam at the outlet of Little Lake. Shortly thereafter, the dam was installed at a crest elevation of 973.2 feet above sea level.

The Association introduced evidence that around 1966 the dam began to deteriorate and the lakes' water levels began to drop. In 1972, the County sought a permit from the Commissioner of Natural Resources (presently known as the DNR) to replace the dam and construct a longer dam structure. The Commissioner granted a permit for the new dam conditioned on the County's raising the crest elevation to 973.8 feet above sea level. The Commissioner noted that the natural ordinary high-water level of Little Lake is "not lower than elevation 976.0" feet above sea level, and, when the ditch was originally constructed, "it was dredged at least 1.4 feet deeper and somewhat wider through Little Lake than was designed." The County did not build the new dam or fix the old one, and Little Lake and Mud Lake continued to lose water.

For the next three decades or so, various entities, including the DNR, asked the County to repair the dam. In 2002, the Association became involved in the matter and offered to pay for the construction of the dam, but no one could agree on the appropriate crest elevation.

The Association also introduced evidence about the negative effects that low water levels have on the environment. Presently, the lakes' water levels are as low as 0.2 inches below the lake bottom. Dennis Simon, a DNR wildlife specialist, testified to the poor waterfowl habitat that the lakes currently provide because of their shallow depth. According to Simon, Mud Lake is "generally choked with cattails and emergent vegetation," and Little Lake provides only a "marginal" waterfowl habitat. He testified that an ideal waterfowl lake should have a "hemi-marsh" condition, which means that approximately half of the lake is open water and half is emergent vegetation. Simon explained that in the past a "couple" feet of water may have sufficed to maintain the hemi-marsh condition in a wetland such as Little Lake, but a recent narrow-leaf cattail invasion has changed things. Narrow-leaf cattail "tends to completely choke out a shallow wetland system that is not controlled in some way, so it's 100 percent dense stands of almost impenetrable cattail and then it doesn't allow the light to penetrate or anything else." Consequently, the wetland becomes totally dominated by the cattail, and the amount and diversity of wildlife in the wetland are reduced. Thus, Simon testified, a three-foot lake depth is "really ... the minimum that we would like to see" because three feet of water would encourage the cattail to "die back," and permit muskrats to "over winter" under the ice, which helps to further remove the invasive vegetation.

The district court ordered judgment for the Association, finding both the County and DNR in violation of MERA for permitting Little Lake and Mud Lake to "all but drain[ ]." Judge Moonan issued findings of fact, conclusions of law and an accompanying memorandum explaining his decision. Specifically, he found that the County had made no repairs on the 1950s dam since 1972, and that "this inaction or passive neglect allowed the dam to deteriorate," which "almost destroyed [the lakes] as natural resources." The district court found that the DNR was also responsible for the MERA violation because "the DNR did not take enforcement action or utilize their authority to protect the public waters

from continued drainage ... failure for over 35 years to accomplish the dam's replacement, or an alternative, amounted to tacit acquiescence to lowering the level of the lakes and allowing unnecessary drainage." The district court's order concluded that neither the county nor the DNR had rebutted the Association's evidence of impairment of the wetlands, and had failed to demonstrate that there was no prudent and feasible alternative to their conduct.

As to the appropriate remedy, Judge Moonan noted that "[t]he evidence of the past decades show that it has been and is futile to utilize administrative proceedings to stop the drainage of the lakes and restore the lakes' value as natural resources." Therefore, based on the testimony at trial regarding the environmental benefits of a three-foot lake depth, Judge Moonan ordered the County to construct an outlet dam in Little Lake "capable of impounding or storing water in Little Lake to a depth of three (3) feet." Recognizing that raising the lake to such a level could cause flooding of the surrounding area, Judge Moonan also ordered the DNR to supervise and fund the implementation of a diking and lift system.

All parties filed motions for amended findings or a new trial. The Association sought amendment of Judge Moonan's order to clarify that a lake-depth of three feet would require the dam's crest elevation to be set at 976 feet. Unfortunately, Judge Moonan passed away before he could rule on the motions. Judge Rodenberg took over the case.

Judge Rodenberg heard arguments on the parties' motions on May 2, 2008. On July 30, 2008, he issued an amended order that deleted the three-foot lake depth requirement and the diking and lift stations requirement from Judge Moonan's order, concluding that the "legislature has en-trusted the exclusive responsibility for lake level establishment and maintenance to the DNR," and therefore, the district court was "without jurisdiction to grant the relief requested: [a crest elevation of 976 feet]." Judge Rodenberg then ordered the County to "complete the outlet control structure in conformity with [the 1972] DNR specifications at an outlet elevation of 973.8 feet."

The Association now appeals from Judge Rodenberg's amended order, arguing that the district court has jurisdiction to set a lake level as a remedy under MERA. The County maintains that 973.8 is the proper crest elevation, at least in part, because the DNR has exclusive control over the water levels of the state. The DNR, for its part, also argues to uphold Judge Rodenberg's order, but raises a separate issue for appellate review, namely, whether it may be held liable as a matter of law for "fail[ing] to take enforcement action against the County." Finally, the intervening landowners filed a notice of review to "seek a clarification in the amended judgment incorporating the District Court's pre-trial findings regarding preservation of the function of the drainage system."

## ISSUES

1. Did the district court err in its conclusion that it was without jurisdiction to set a crest elevation for the dam on Little Lake?

2. Did the district court err in finding that the DNR had violated MERA?

## ANALYSIS

### I

■ The Association's primary contention on appeal is that the district court erred when it concluded that it is without jurisdiction to set a crest elevation for the

dam on Little Lake because of the DNR's exclusive authority over water levels of the state. The existence of subject-matter jurisdiction presents a question of law, which we review de novo. *Mercer v. Andersen*, 715 N.W.2d 114, 118 (Minn.App. 2006). Because we have already determined that the district court has subject-matter jurisdiction over this particular action, and because the DNR is subject to MERA according to the plain language of the statute, we hold that the district court may properly exercise jurisdiction over the DNR and set the crest elevation for the dam to remedy the MERA violation.

■■■ The County and the DNR maintain that the district court "lacked jurisdiction to order the dam's crest elevation at 976 feet," because the DNR has "exclusive jurisdiction" over water levels. Minnesota "[d]istrict courts are courts of general jurisdiction and have the power to hear all types of civil cases, with a few exceptions." *Irwin v. Goodno*, 686 N.W.2d 878, 880 (Minn.App.2004). "Subject-matter jurisdiction is defined as not only authority to hear and determine a particular class of actions, but authority to hear and *determine* the particular questions the court assumes to decide." *Id.* (quotations omitted) (emphasis added). That is, subject-matter jurisdiction entails both the power to "hear" a case and the power to determine the issues in the case. The determination of the issues also necessarily includes the court's power to order the appropriate relief within the legislature's prescribed statutory limits.

We have already determined that the district court may properly exercise jurisdiction over the exact controversy in this case. *Swan Lake I*, 711 N.W.2d at 526. In *Swan Lake I*, the County sought a determination that the district court was without subject-matter jurisdiction to entertain the Association's MERA claim because it had exclusive authority over the drainage of its lakes. We declined to do so, and held that the district court properly exercised subject-matter jurisdiction over the MERA action despite the availability of administrative recourse under the drainage code. *Id.* The holding and rationale of *Swan Lake I* control our decision in this case. *See Woodhall v. State*, 738 N.W.2d 357, 363 (Minn.2007) (stating that the doctrine of stare decisis generally requires courts to "adhere to former decisions in order that there might be stability in the law").

We conclude that the DNR is subject to MERA for the same reasons that we concluded in *Swan Lake I* that the County is subject to MERA. Under MERA, an individual "may maintain a civil action in the district court for declaratory or equitable relief ... against any person, for the protection of the air, water, land or other natural resources located within the state." Minn.Stat. § 116B.03, subd. 1 (2008). "Persons" against whom MERA actions may be brought include "any natural person, any state, municipality or other governmental or political subdivision or other public agency or instrumentality." Minn. Stat. § 116B.02, subd. 2 (2008). Furthermore, the "rights and remedies provided [in MERA] shall be in addition to any administrative, regulatory, statutory, or common law rights and remedies now or hereafter available." Minn.Stat. § 116B.12 (2008). Under the plain language of MERA, a district court may exercise jurisdiction over the DNR whether or not it has been granted specific authority to set the water levels of lakes.

■■■ The conclusion that the district court is without authority to restore a wetland would directly undermine MERA's purpose, which is "to preserve the environment in its natural state," *State by Skeie v. Minnkota Power Coop., Inc.,*

281 N.W.2d 372, 373 (Minn.1979), and provide "an adequate civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction." Minn. Stat. § 116B.01 (2008). The MERA citizen suit was brought to effectuate the legislative pronouncement that every person "is entitled by right to the protection, preservation, and enhancement of air, water, land, and other natural resources located within the state." Minn.Stat. § 116B.01. "[I]t is the duty of the courts to support the legislative goal of protecting our environmental resources." *County of Freeborn v. Bryson*, 309 Minn. 178, 188, 243 N.W.2d 316, 321 (1976).

To hold, as we did in *Swan Lake I*, that the district court has subject-matter jurisdiction over a MERA claim regarding the water levels of lakes but that the DNR has the exclusive authority to set crest elevations would render the MERA protections largely illusory and beyond the reach of the courts, especially where, as here, the question of the crest elevation is a focus of the dispute. Although the legislature could have vested the DNR with the exclusive authority to set crest elevations, it did not do so. *See Hoffman v. N. States Power Co.*, 764 N.W.2d 34, 44 n. 5 (Minn.2009) ("Where the legislature provides for exclusive agency jurisdiction, the separation of powers principles ... may bar the judiciary from acting."). It would also be meaningless to hold that the district court may entertain a claim under MERA about the drainage of wetlands, decide that a wetland has been impermissibly drained in violation of the statute, and yet hold that it is unable to order an appropriate remedy because it lacks jurisdiction to effectuate the law completely.

The state has a "paramount concern" for the protection of natural resources. *Bryson*, 309 Minn. at 180, 243

N.W.2d at 317. To this end, the legislature has permitted district courts in MERA cases to "grant declaratory relief, temporary and permanent equitable relief, or ... impose such conditions upon a party as are necessary or appropriate to protect the air, water, land or other natural resources located within the state from pollution, impairment, or destruction." Minn. Stat. § 116B.07 (2008). Thus, the district court must necessarily look to the particular facts and circumstances of each case in fashioning a remedy.

In this case, there is no dispute that Little Lake and Mud Lake are natural resources and that their value as resources has been impaired by decades of neglect. Both orders of the district court found that respondents failed to rebut the Association's prima facie case that a MERA violation had occurred. Respondents have not challenged that finding on appeal. Instead, respondents claim that there was evidence at trial that lower water levels could benefit the environment and that the flooding caused by raising the crest elevation would actually "harm" other kinds of wildlife in the area. We find no support for these contentions in the record. In fact, the County agrees that "the evidence at trial supported the conclusion that an ideal waterfowl lake, or optimum waterfowl habitat, would be created with a minimum of three feet of water in the lake basins." And the DNR admits that "the evidence in fact reflects that 'optimum-habitat for waterfowl' requires that about half of the basin have a depth of three feet or greater."

In sum, based on our previous holding, the plain language of MERA, and the evidence presented at trial regarding the impairment of Little Lake and Mud Lake, we are compelled to conclude that the district court may properly exercise jurisdiction over the DNR and may order the lakes to

be refilled. Furthermore, it is well within the district court's authority to set the dam's crest elevation in order to raise the lakes' water levels to protect them as natural resources. The ruling in the amended order that the district court lacks jurisdiction to set the crest elevations of the lakes in issue is reversed.

However, all parties agree that Judge Moonan's order was deficient in that it did not specify a crest elevation for the dam, but only ordered that the lakes be restored to a three-foot depth. A three-foot lake depth does not adequately inform the County of the appropriate crest elevation at which to set the dam, and thus, remand is required to set the crest elevation for the dam in accordance with MERA. Also, because the Association concedes that Judge Moonan improperly ordered the DNR to build a diking and lift system, we affirm that portion of the amended order that relieves the DNR from those requirements.

Because we are remanding for the district court's determination of the appropriate crest elevation, we need not consider respondents' various arguments regarding the advisability of a three-foot lake depth. The question of the necessary and appropriate remedy for these particular lakes was, and is, for the district court to decide in accordance with MERA and applicable precedent.

## II

■ The DNR filed a notice of review of the distinct issue of whether the district court erred in holding the DNR liable under MERA for failing to force the County to fix the dam on Little Lake. Judge Moonan concluded that the DNR was responsible for the condition of the lakes because it "did not take enforcement action or utilize [its] authority to protect the public waters from continued drainage. . . .

[This] amounted to tacit acquiescence to lowering the level of the lakes and allowing unnecessary drainage." Judge Rodenberg did not amend those findings of fact and conclusions of law. We review de novo the district court's conclusions of law in a MERA case, and its findings of fact for clear error. *State ex rel. Fort Snelling State Park Ass'n v. Minneapolis Park & Rec. Bd.*, 673 N.W.2d 169, 174 (Minn.App. 2003), *review denied* (Minn. Mar. 16, 2004). Although the record supports the district court's factual findings that the DNR acquiesced in the dam's deterioration and the drainage of the lakes, we hold that the district court erred as a matter of law in finding the DNR liable for the County's failure to maintain and repair its own dam.

The DNR argues that "[a] state agency's failure to take enforcement action is not 'conduct which materially adversely affects . . .' the environment under MERA," and, alternatively, that MERA only allows for suit to be brought against a state agency under the enumerated circumstances listed under Minn.Stat. § 116B.10, subd. 1 (2008). An agency may be held liable for its inaction if the failure to act results in, or is likely to result in a materially adverse effect on the environment. *See People for Envtl. Enlightenment & Responsibility, Inc. v. Minnesota Envtl. Quality Council,* 266 N.W.2d 858, 867 (Minn.1978) (stating that "[o]nce a person or a group has made a prima facie showing that an agency's action or *inaction* will materially adversely affect protectible natural resources," the agency must rebut the prima facie case) (emphasis added).

The civil action under MERA is provided in Minn.Stat. § 116B.03, subd. 1. That action may be brought against any "person," including a state agency. Minn.Stat. § 116B.02, subd. 2 (defining "person" against whom MERA action may be brought to include state agencies). Minn.

Stat. § 116B.10, subd. 1, also permits a party to challenge a state agency's "environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit." Read together, these sections clearly provide two distinct ways for a party to challenge an agency's conduct. To construe section 116B.10 as overriding or usurping the plain language of sections 116B.02 and 116B.03 would be unreasonable. We presume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17(1) (2008). Thus, we disagree with the DNR that section 116B.10 provides the exclusive mechanism by which a citizen may challenge an agency's conduct.

Nevertheless, the DNR may not be held liable under the facts of this case. The neglected dam was built by the County as part of its drainage-improvement project which began in 1949, and it was the County's responsibility to maintain the dam in good condition. *See* Minn.Stat. § 103E.705, subd. 1 (2008) (stating that the drainage authority "shall maintain the drainage system that is located in its jurisdiction"). Although the DNR had the authority to order the County to repair the dam under Minn.Stat. § 103G.515, subd. 3 (2008), its decision not to issue such an order was discretionary, and this record does not support the conclusion that the DNR's inaction was the cause of the dam's deterioration and the lowering of the lakes' water levels.

Finally, intervening landowners seek review regarding Judge Rodenberg's deletion of some language in Judge Moonan's order regarding the impact of higher lake levels on County Ditch 46A. Because we are remanding the matter to the district court, we need not address that issue, which they may raise in the district court.

## DECISION

Under MERA, the district court has jurisdiction over the DNR and may set the crest elevation for the dam at the outlet of Little Lake. We reverse that portion of the amended order holding to the contrary and remand to the district court for further proceedings as necessary in determining the appropriate crest elevation. We also reverse that portion of the order holding the DNR liable for the County's negligence. We affirm the remainder of the order insofar as it holds the County in violation of MERA and removes the requirement of installing and maintaining a diking and lift system, which all parties agree is unnecessary.

**Affirmed in part, reversed in part, and remanded.**