REYES, Judge
On appeal from the district court's calculation and offset of collateral-source payments following a jury's award of damages, appellant Ambree Getz argues that the district court erred when it deducted from the jury award the amount of the discounts negotiated under Minnesota's Prepaid Medical Assistance Program (PMAP), which she asserts are collateral sources excepted from offset as "payments made pursuant to the United States Social Security Act" under Minn. Stat. § 548.251, subd. 1(2). We reverse and remand.
FACTS
On September 25, 2012, Ambree Getz drove a motor vehicle that was struck by a school bus driven by respondent Eila Peace and owned by respondent Palmer Bus Service of Maple River, Inc. (collectively, respondents). After Getz sued respondents for negligence, a jury returned a special verdict that assigned 20 percent fault to Getz and 80 percent fault to Peace. The jury also found that Getz had incurred damages for past medical expenses in the amount of $224,998.16. As a medical-assistance enrollee, Getz received Medicaid benefits through contracted managed-care organizations (MCOs) operating under the state's PMAP.
Respondents moved for a determination of collateral sources pursuant to Minn. Stat. § 548.251, subd. 2, and to limit the award of past medical expenses to the amount actually paid by Getz's MCOs, $45,979.41, which accounted for negotiated *235 discounts under the PMAP. The district court first reduced Getz's award for past medical expenses by $20,000 to offset the no-fault-insurance benefits she received. The district court then reduced the amount of the total award $45,979.41 based on its interpretation that the statute does not except from offset the discounts negotiated for Medicaid beneficiaries by an MCO operating under the PMAP. Getz appeals.
ISSUE
Are discounts negotiated by an MCO operating under Minnesota's PMAP "payments made pursuant to the United States Social Security Act" that constitute collateral sources excepted from offset under Minn. Stat. § 548.251, subd. 1(2) ?
ANALYSIS
Getz appeals the district court's interpretation of the collateral-source statute and argues that its offset calculation erroneously deducted from the jury's damages award discounts negotiated by MCOs operating under the PMAP for the cost of her medical care. We agree.
The question on appeal is one of statutory interpretation, which we review de novo. Ouradnik v. Ouradnik , 912 N.W.2d 674, 676 (Minn. 2018). We "examine the statutory language to determine whether the words of the law are clear and free from all ambiguity." Staab v. Diocese of St. Cloud , 813 N.W.2d 68, 72 (Minn. 2012). If the language of the statute is clear, "we apply the plain language of the statute and decline to explore its spirit or purpose." Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016). However, because our plain-language interpretation of section 548.251 comports with its statutory background, we provide foundational context before examining the statute's language.
At common law, payments from collateral sources were not deducted from a plaintiff's damages awarded by the jury. Hueper v. Goodrich , 314 N.W.2d 828, 830 (Minn. 1982). The central policy supporting the common-law rule "is that the tortfeasor, as a wrongdoer who caused a particular harm, should not benefit from a tort plaintiff's ability to secure other compensation." Swanson v. Brewster , 784 N.W.2d 264, 269 n.7 (Minn. 2010) ; see also Hueper , 314 N.W.2d at 830 (citing Restatement (Second) of Torts § 920A, cmt. b (1979)).
In 1986, the Minnesota Legislature enacted the collateral-source-calculations statute, which prevented most double recoveries by injured plaintiffs. 1986 Minn. Laws ch. 455, § 80, at 878-79 (now codified at Minn. Stat. § 548.251 ). As a result, on a party's motion, district courts are now required to reduce damages for an injury or disability sustained by a plaintiff if certain collateral-source payments have been made to the plaintiff. Minn. Stat. § 548.251, subd. 2 ; see Imlay v. City of Lake Crystal , 453 N.W.2d 326, 331 (Minn. 1990).
Collateral sources that offset a plaintiff's recovery are defined as "payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict." Minn. Stat. § 548.251, subd. 1.
The statute further defines collateral-source payments as those made pursuant to:
(1) a federal, state, or local income disability or Workers Compensation Act; or other public program providing medical expenses, disability payments, or similar benefits;
(2) health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; except life *236 insurance benefits available to the plaintiff, whether purchased by the plaintiff or provided by others, payments made pursuant to the United States Social Security Act , or pension payments;
Minn. Stat. § 548.251, subd. 1 (emphasis added). In Swanson v. Brewster , the supreme court interpreted the word "payments" to unambiguously include negotiated discounts obtained by the plaintiff's private health insurer and held that such discounts are collateral sources subject to offset. 784 N.W.2d at 275-77 (interpreting Minn. Stat. § 548.251, subd. 1 ). In Renswick v. Wenzel , we interpreted the statute's neighboring exception clause in light of the holding in Swanson regarding negotiated discounts. 819 N.W.2d 198, 210-11 (Minn. App. 2012), review denied (Minn. Oct. 16, 2012). We held in Renswick that Medicare-negotiated discounts are likewise payments, but they are unambiguously excepted from offset by the exception clause as "payments made pursuant to the United States Social Security Act." Id.
Respondents contend that the phrase "pursuant to" within the exception clause requires that any negotiated discounts excepted from offset either be directly negotiated by state or federal authorities or be directly mandated by the federal act. Because our precedent dictates that the language of the exception clause providing that "payments made pursuant to the United States Social Security Act" is unambiguous, our examination focuses on the statute's plain and ordinary meaning. The collateral-source-offset statute does not define the phrase "pursuant to," so we use dictionary definitions to analyze its plain meaning. See Shire v. Rosemount, Inc. , 875 N.W.2d 289, 292 (Minn. 2016) (considering dictionary definitions to determine plain meaning of a word). The word "pursuant" is defined as "[p]roceeding from and conformable to" and "in accordance with." The American Heritage Dictionary of the English Language 1423 (4th ed. 2006). The word "to" means to be "in accord with." Id. at 1814. The word "to" is a preposition modifying the adjective "pursuant" and is used to introduce an object or subject; here, the United States Social Security Act. In full, the phrase "pursuant to" means "in carrying out," "in conformity with," and "according to." See Merriam-Webster's Collegiate Dictionary 1011 (11th ed. 2003). This is consistent with the supreme court's interpretation of the same phrase applied in a federal statute. See Risdall v. Brown-Wilbert, Inc. , 753 N.W.2d 723, 730 n.6 (Minn. 2008) (" '[P]ursuant to' is defined as '[i]n compliance with, 'in accordance with,' 'as authorized by' and 'under[.]' "). Contrary to respondents' argument, the plain language of the statute contains no requirement of direct state or federal action in negotiating discounts.
We next determine whether the discounts negotiated for Getz as a Medicaid beneficiary and PMAP enrollee were payments made in accordance with the United States Social Security Act. "Medicaid, enacted in 1965 as Title XIX of the Social Security Act, is a publicly funded program to ensure medical care to certain individuals who lack the resources to pay for the costs of essential medical services." Martin ex rel. Hoff v. City of Rochester , 642 N.W.2d 1, 9 (Minn. 2002) (citing 42 C.F.R. § 430.0 ). Medicaid is funded by both the federal and state governments. Id. Title XIX authorizes states to administer their own programs within the federal requirements and submit to the federal government state plans that conform to these requirements. Id . at 9, 11.
Section 1932(a) of the Social Security Act authorizes participating states to establish managed-care programs by contracting *237 with private-sector MCOs to deliver Medicaid benefits and services to eligible enrollees. 42 U.S.C. 1396u-2(a)(1) (2012). The MCOs, in turn, provide or arrange for services for enrollees in exchange for capitation payments. Id. ; see 42 C.F.R. § 438.2 (2017) (defining capitation payment as periodic payment from a state to a contractor on behalf of an enrolled beneficiary). Minnesota's PMAP is a managed-care program for Medicaid-eligible individuals operating under the authority of section 1932(a) of the Act and Minn. Stat. § 256B.69 (2016 & Supp. 2017), in which the state contracts with MCOs to provide healthcare benefits and services to these individuals. As a Medicaid beneficiary and PMAP enrollee, the discounts negotiated for Getz by her MCOs were obtained according to the authority granted by the Social Security Act and therefore constitute "payments made pursuant to the United States Social Security Act." See Swanson , 784 N.W.2d at 276 (supreme court concluding discounts are payments made on Swanson's behalf per health insurance policy related to Swanson's injury and are therefore a collateral source).
Respondents argue extensively that our analysis must be focused on who must make such payments referenced in the exception clause. This argument is misguided because its cornerstone relies on words not expressly included in the statute. The statute does not except only such "payments made by the state or federal government pursuant to the United States Social Security Act." The exception clause does not specify who must make such payments; it only specifies the law governing and authorizing the excepted collateral source payments: the United States Social Security Act. We decline to read in an additional limitation not expressly provided for in the statute's text. See State v. Caldwell , 803 N.W.2d 373, 382 (Minn. 2011) ("We will not supply words that the Legislature either purposely omitted or inadvertently left out.").
Respondents also set forth policy arguments related to insurance premiums. We also decline to address these arguments because we do not address the spirit or purpose of a statute when its meaning is plain. Cocchiarella , 884 N.W.2d at 624. In short, if the collateral-source-calculations statute "needs revision in order to make it embody a more sound public policy, the Legislature, not the Judiciary, must be the reviser." Axelberg v. Comm'r of Pub. Safety , 848 N.W.2d 206, 213 (Minn. 2014). We therefore reverse and remand to the district court for further proceedings consistent with this opinion.
DECISION
The district court erred in its interpretation of Minn. Stat. § 548.251, subd. 1(2), because discounts negotiated for Medicaid beneficiaries under Minnesota's PMAP are "payments made pursuant to the United States Social Security Act" and are collateral sources excepted from offset under Minn. Stat. § 548.251, subd. 1(2).
Reversed and remanded.