ISSUES
I. Did the district court err by determining that Minn. Stat. § 116B.03, subd. 1, applies to claims relating to DNR-issued groundwater-appropriation permits?
II. Did the district court err by concluding that the common-law public-trust doctrine applies to groundwater in Minnesota?
ANALYSIS
Together, appellants make nine arguments. They argue that the district court erred by (1) allowing the action to proceed under Minn. Stat. § 116B.03 instead of Minn. Stat. § 116B.10, (2) misapplying the public-trust doctrine, (3) denying summary judgment on the ground that respondents failed to exhaust administrative remedies, (4) refusing to require joinder of affected permit holders not parties to the case, (5) interpreting MERA to require the DNR to reopen and amend permits, (6) failing to give deference to the DNR's permitting decisions, (7) violating separation-of-powers principles, (8) requiring the DNR to amend existing permits without holding administrative hearings, and (9) making clearly erroneous factual findings.[7] Because *359 our resolution of the first two arguments is dispositive, we do not reach the remaining arguments.
I. When a complaint alleges violations of MERA based on conduct undertaken pursuant to a permit issued by the DNR, MERA relief is available only under Minn. Stat. § 116.10 and the bar in Minn. Stat. § 116B.03 applies.
Appellants argue that the district court erred by allowing respondents to pursue claims under Minn. Stat. § 116B.03. They argue that respondents' claims challenge the adequacy and propriety of DNR-issued permits and were therefore required to be brought under Minn. Stat. § 116B.10. Respondents argue that the statute does not require them to bring their claims under section 116B.10, because their challenge is to the DNR's overall permitting process and the cumulative impact of the water-use permits.
Whether the district court properly applied Minn. Stat. § 116B.03 to respondents' claims presents a question of statutory interpretation, and we review such questions de novo. Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 836 (Minn. 2012). The object of statutory interpretation is to ascertain and effectuate the intention of the legislative body. Minn. Stat. § 645.16 (2018). "If the legislature's intent is clear from the unambiguous language of the statute, [appellate courts] apply the statute according to its plain meaning." Staab v. Diocese of St. Cloud , 853 N.W.2d 713, 716-17 (Minn. 2014).
In interpreting a statute, we must construe statutory words and phrases according to the rules of grammar and according to their common and approved usage. Minn. Stat. § 645.08(1) (2018). A court may turn to dictionaries to assess the plain and ordinary meaning of a term. State v. Thonesavanh , 904 N.W.2d 432, 436 (Minn. 2017).
MERA provides "any person" residing within Minnesota a private right of action for declaratory or equitable relief to protect natural resources from "pollution, impairment, or destruction." Minn. Stat. § 116B.03, subd. 1. MERA broadly defines "person" as "any natural person, any state, municipality or other governmental or political subdivision or other public agency or instrumentality ... or other organization ... and any other entity, except a family farm, a family farm corporation or a bona fide farmer corporation." Minn. Stat. § 116B.02, subd. 2. Both respondents and appellants concede-and we agree-that the associations and the DNR are "persons" as defined by the statute. Likewise, the municipalities withdrawing groundwater are "persons" under MERA because they are governmental or political subdivisions.
To maintain an action in district court under section 116B.03, a plaintiff must make "a prima facie showing that the conduct of the defendant has, or is likely to cause the pollution, impairment, or destruction of the air, water, land or other natural resources located within the state." Minn. Stat. § 116B.04(b) ; State by Archabal v. County of Hennepin , 495 N.W.2d 416, 421 (Minn. 1993). The scope of the private right of action under section 116B.03, however, is limited: "[N]o action shall be allowable under this section for conduct taken by a person pursuant to any environmental quality standard, limitation, rule, order, license, stipulation agreement *360 or permit issued by the Pollution Control Agency, Department of Natural Resources, Department of Health or Department of Agriculture." Minn. Stat. § 116B.03, subd. 1.
A separate provision of MERA, section 116B.10 (captioned "Civil Action Against State"), authorizes a suit in district court challenging the adequacy of "an environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit promulgated or issued by the state or any agency or instrumentality thereof." Minn. Stat. § 116B.10, subd. 1 (emphasis added). Under section 116B.10, a plaintiff must produce "material evidence" showing that the challenged standard or permit is "inadequate to protect" the state's natural resources. Id. , subd. 2.
Respondents' action is plainly one against a state agency, and it challenges the adequacy of the groundwater-extraction permits to protect the lake. The lake, in turn, is a natural resource. Minn. Stat. § 116B.02.
Respondents argue, and the district court concluded, that section 116B.10 is not the exclusive remedy available when the challenge is to a standard or permit. Respondents allege, and the district court found, that the DNR's actions and failures to act adversely affected the lake. At issue, then, is whether the relief available under section 116B.10 is exclusive.[8] We agree with appellants that, under the statute's plain language, section 116B.10 is the exclusive remedy available under MERA when the challenged action is that of a state agency in issuing a permit.
In situations where, as here, a permit issued by an agency pursuant to its duties under a regulatory scheme requires the application of rules or statutes to data within the realm of agency expertise, courts are generally deferential to agency determinations. Minn. Ctr. for Envtl. Advocacy v. City of Winsted , 890 N.W.2d 153, 158 (Minn. App. 2017). See Reserve Mining Co. v. Herbst , 256 N.W.2d 808, 824 (Minn. 1977) (stating that it is a "fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience"). Appellants' proposed construction of section 116B.10 as the exclusive remedy under MERA in this circumstance is consistent with this standard of review. Under section 116B.10, as more fully discussed below, the remedy upon a showing that an agency-issued permit is inadequate to protect natural resources is that the district court remits the parties to the agency that issued the permit for "appropriate administrative proceedings," subject to further court review. Minn. Stat. § 116B.10, subd. 3.
Moreover, and as appellants point out, to conclude that a section 116B.03 action is available to challenge an agency-issued permit would render section 116B.10"both meaningless and superfluous." Again, we agree. Interpreting MERA to allow a section 116B.03 action to challenge whether an agency-issued permit adequately protects the state's natural resources puts the district court in the position of substituting its own judgment for that of the agency to which courts ordinarily defer. Moreover, there would seem to be nothing left of section 116B.10 if a district court may exercise jurisdiction over permit-issuing agencies under section 116B.03 to order relief within the scope of the legislature's *361 grant of authority to the agency.[9]
We also observe that section 116B.03, subd. 1, contains a provision that applies here: "[N]o action shall be allowable under this section for conduct taken by a person pursuant to any ... permit issued by ... the Department of Natural Resources." Minn. Stat. § 116B.03, subd. 1.
The bar in Minn. Stat. § 116B.03 applies to "conduct" pursuant to a permit. MERA does not define "conduct." A reviewing court therefore considers the dictionary definition to determine the word's ordinary meaning. Shire v. Rosemount, Inc. , 875 N.W.2d 289, 292 (Minn. 2016). "Conduct," as a noun, means "the manner in which a person behaves, especially in a particular place or situation." Oxford Dictionary of English 364 (3d ed. 2010). Another definition is "personal behavior; way of acting; bearing or deportment." Random House Dictionary of the English Language 426 (2d ed. 1987). And another provision of MERA, Minn. Stat. § 116B.02, provides that "[p]ollution, impairment, or destruction" is (1) "any conduct by any person which violates, or is likely to violate, any environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit of the state or any instrumentality, agency, or political subdivision thereof which was issued prior to the date the alleged violation occurred" or (2) "any conduct which materially adversely affects or is likely to materially adversely affect the environment." Minn. Stat. § 116B.02, subd. 5.
MERA does not further define when conduct is taken "pursuant to" a permit. Garner's Dictionary of Legal Usage presents multiple definitions of the phrase "pursuant to": "(1) In accordance with; (2) under; (3) as authorized by; or (4) in carrying out." Bryan A. Garner, Garner's Dictionary of Legal Usage 737 (3d ed. 2011). We have recently given the phrase similar meaning when interpreting it in the collateral-source-offset statute. See Getz v. Peace , 918 N.W.2d 233, 236 (Minn. App. 2018), review granted (Minn. Nov. 27, 2018). In the phrase "pursuant to," "to" is a "preposition modifying the adjective pursuant and is used to introduce an object or subject." Id. "In full, the phrase 'pursuant to' means 'in carrying out,' 'in conformity with,' and 'according to.' " Id. The Minnesota Supreme Court, interpreting the phrase in a federal statute, has interpreted it to mean "in compliance with," "in accordance with," "as authorized by," and "under." Risdall v. Brown-Wilbert, Inc. , 753 N.W.2d 723, 730 n.6 (Minn. 2008).
The conduct alleged to have impaired the lake's water levels is groundwater pumping. The DNR issued, maintained, and reviewed groundwater-appropriation permits necessary for municipalities to extract groundwater. The DNR has only one tool for regulating water appropriations-permits. The complained-of conduct that impairs the lake is the withdrawal of groundwater in conformity with or under the authority of the DNR's permits. Applying the plain language of the statute, *362 the section 116B.03 bar applies here. Accordingly, the district court erred in applying Minn. Stat. § 116B.03 to respondents' claims.
Our interpretation of the plain language of the bar under section 116B.03, subdivision 1, is confirmed by reference to the other provisions of MERA. A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word phrase or sentence should be deemed superfluous, void, or insignificant. Martin v. Dicklich , 823 N.W.2d 336, 345 (Minn. 2012). A statute is to be read and construed as a whole and each section must be interpreted in light of the surrounding sections to avoid conflicting interpretations. Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). Sometimes the meaning of a section only becomes clear when it is read in conjunction with surrounding sections. Id. at 277-78.
Although we think that the plain language of section 116B.03 is sufficient to demonstrate that no action under that section is allowable here, applying the bar to permit-related challenges also makes sense in the overall context of MERA. The unambiguous language in section 116B.03 aligns with the evident legislative intent underlying section 116B.10, which applies when a MERA claim is a challenge to a permit issued by the state or any agency. Minn. Stat. § 116B.10, subd. 1. Section 116B.10 authorizes a civil action in district court for declaratory or equitable relief where "the nature of the action is a challenge to an environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit promulgated or issued by the state or any agency or instrumentality thereof for which the applicable statutory appeal period has elapsed." Id. Here, the nature of respondents' challenge is to permits "promulgated or issued" by the DNR. Despite the appeal period for the permits having elapsed, section 116B.10 provides for a process to remit the parties to the permit-issuing agency for further proceedings.
Under Minn. Stat. § 116B.10, subd. 2, pertaining to a "civil action ... against the state," a plaintiff has "the burden of proving the existence of material evidence showing said inadequacy of said environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit." Minn. Stat. § 116B.10, subd. 2. But, unlike in section 116B.03, under section 116B.10, once a MERA plaintiff makes a prima facie showing of the inadequacy of a permit in protecting the environment, the district court remits to "the state agency or instrumentality that promulgated the environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit which is the subject of the action." Minn. Stat. § 116B.10, subd. 3. Once the case is remitted to the proper administrative agency, that agency is to "institute the appropriate administrative proceedings to consider and make findings and an order on those matters specified in subdivision 2." Id. "In so remitting the parties, the court may grant temporary equitable relief where appropriate to prevent irreparable injury."[10] Id. The district court retains jurisdiction to review whether the agency's resulting order is supported by a preponderance of the evidence. Id.
Read together, MERA sections 116B.03 and 116B.10 set out an orderly process for permit-related challenges under Minn. Stat. § 116B.10 that confirms the plain *363 language of section 116B.03 barring permit-related challenges under that process and provision. We do not reach appellants' separation-of-powers arguments because the plain language of Minn. Stat. § 116B.03, subd. 1, renders it unnecessary to do so. The obvious legislative purpose is to entrust rule-making and permit issuance to the executive branch, subject to judicial oversight under chapter 116B.
The district court erred in determining that section 116B.03 applies to respondents' claims, because it reasoned that the conduct at issue was not the DNR's permitting, but instead was the broader impact of the DNR's permits. But the conduct at issue here is groundwater pumping, which the DNR controls through its permitting authority. Because respondents' claims challenge the adequacy of DNR-issued groundwater-appropriation permits, and because the groundwater withdrawals are actions taken pursuant to DNR permits, the plain language of MERA requires that appellants' challenges be brought under Minn. Stat. § 116B.10.
We are mindful of both parties' arguments that this case is controlled by our decisions in the Swan Lake series of cases. State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty. Bd. of Cty. Comm'rs , 799 N.W.2d 619 (Minn. App. 2011) ( Swan Lake III ); State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty. Bd. of Cty. Comm'rs , 771 N.W.2d 529 (Minn. App. 2009) ( Swan Lake II ); State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty. Bd. of Cty. Comm'rs , 711 N.W.2d 522 (Minn. App. 2006) ( Swan Lake I ), review denied (Minn. June 20, 2006).
The facts here are unlike those in Swan Lake . In those cases, the Swan Lake Area Wildlife Association asserted a MERA claim against the Nicollet County Board of County Commissioners. Swan Lake I , 711 N.W.2d at 524. In Swan Lake I , the county board of commissioners argued that the district court did not have subject-matter jurisdiction over the wildlife association's MERA claim, because the drainage code provided the proper administrative processes and remedies. Id. at 525. We concluded that, under Minn. Stat. § 116B.12, the district court had subject-matter jurisdiction over the MERA claim, regardless of the administrative processes and remedies available under the drainage code provisions. Id. at 526.
In Swan Lake II , the DNR argued that it could not be held liable under MERA, because a state agency's failure to take enforcement action is not conduct that materially adversely affects the environment under MERA. Swan Lake II , 771 N.W.2d at 537. The association sought to hold the DNR responsible because it failed to take enforcement action or use its authority to protect public waters from continued drainage where the county had neglected a dam and allowed it to deteriorate. Id. at 533. We rejected the DNR's argument that section 116B.10 provides the exclusive mechanism by which a citizen may challenge an agency's conduct, but concluded that, under the facts of the case, the DNR could not be liable for the county's failure to maintain the dam in question. Id. at 538.
In Swan Lake III , we further explained that if a plaintiff "proves a violation of MERA, the district court may grant declaratory relief, temporary and permanent equitable relief, or may impose such conditions upon a party as are necessary to protect the air, water, land or other natural resources located within the state from pollution, impairment, or destruction." Swan Lake III , 799 N.W.2d at 625 (quotation omitted). But the relief granted-and the only relief available-in Swan Lake III was against Nicollet County, and there was neither evidence nor argument that *364 the county's neglect of the dam was action taken pursuant to a permit.
The facts of Swan Lake significantly differ from the facts here. In Swan Lake , the only DNR conduct at issue was its alleged failure to take enforcement action against the county. Swan Lake did not involve a challenge to action taken pursuant to a DNR-issued permit. To the contrary, the county's inaction was at issue in Swan Lake , and there was no DNR permit. The Swan Lake decisions stand for the propositions that MERA claims do not require the exhaustion of administrative processes, and that inaction-in that case by a county-can give rise to a MERA claim. Our Swan Lake decisions do not control here.
We hold that, because the conduct that respondents allege impairs the lake is taken pursuant to DNR permits, "no action shall be allowable" under section 116B.03. This does not mean that respondents have no recourse. Relief under Minn. Stat. § 116B.10, captioned "Civil Action Against State," is available.
To the extent that the DNR has itself violated the law, as respondents claim and as the district court found, the remedy for that is clear. When a district court remits the subject of a permit-related action to the agency for "appropriate administrative proceedings," it "shall retain jurisdiction for purposes of judicial review." Minn. Stat. § 116B.10, subd. 3. And, when administrative actions are unlawful, courts will not affirm the agency action. See, e.g. , Minn. Stat. § 14.69 (2018) (providing that courts may reverse or modify an agency action that violates the constitution, is affected by an error of law, or is arbitrary and capricious).
Here, the district court made detailed findings and, as the DNR agrees, respondents have met their burden of showing that the existing DNR-issued permits are inadequate to protect White Bear Lake. Accordingly, respondents have made a prima facie showing as required under Minn. Stat. § 116B.10, subd. 3. Under section 116B.10, temporary equitable relief is available "to prevent irreparable injury to" the lake. Whether and to what extent such relief should be ordered on remand is entrusted to the district court's discretion. We therefore reverse and remand to the district court to remit the parties to the DNR to institute appropriate administrative proceedings.[11]
II. Minnesota courts have never applied the public-trust doctrine to groundwater; any expansion of the public-trust doctrine to encompass groundwater as "navigable waters" is beyond our authority as an error-correcting court.
The DNR and Town of White Bear argue that the district court erroneously held that the public-trust doctrine applies to authorize relief in these circumstances. Respondents argue that the district court properly applied the public-trust doctrine *365 to the DNR's "failure to impose conditions and limits" on groundwater withdrawal "despite its knowledge that its failure to manage those permits" was damaging the lake.
"The public-trust doctrine is a common-law principle, adopted in Minnesota, providing that the state, in its sovereign capacity, holds absolute title to 'all ... navigable waters and the soil under them for [the] common use' and imposes a duty upon the state to maintain those waters for navigation and other public uses." Save Mille Lacs Sportsfishing, Inc. v. Minn. Dep't of Nat. Res. , 859 N.W.2d 845, 849 (Minn. App. 2015) (quoting State v. Longyear Holding Co. , 224 Minn. 451, 29 N.W.2d 657, 669-70 (1947) ). This doctrine is founded on the principle that "upon admission of a state to the Union title to the beds of all navigable waters therein remains in the state, the federal government taking no title or interest therein except under its power to regulate commerce between the states." Longyear , 29 N.W.2d at 665.
Under the public-trust doctrine, the "state owns navigable waters and the lands under them for public use, as trustee for the public, and not as a proprietor with right of alienation." Larson v. Sando , 508 N.W.2d 782, 787 (Minn. App. 1993), review denied (Minn. Jan. 21, 1994); see also Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co. , 429 U.S. 363, 373-74, 97 S.Ct. 582, 588, 50 L.Ed.2d 550 (1977) (stating that the state's title includes both the navigable waters and the waterbed below); Illinois Cent. R.R. Co. v. Illinois , 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892). Public use comprehends not only navigation by watercraft for commercial purposes, but the use also for the ordinary purposes of life such as "boating, fowling, skating, bathing, taking water for domestic or agricultural purposes, and cutting ice." Nelson v. De Long , 213 Minn. 425, 7 N.W.2d 342, 346 (1942) ; see also State v. Korrer , 127 Minn. 60, 148 N.W. 617 (1914) (division of waters into navigable and nonnavigable is another way of dividing them into public and private waters and if a body of water is adapted for public use, it is a public or navigable water).
"Caselaw in Minnesota on the scope and application of the public-trust doctrine is sparse." Save Mille Lacs Sportsfishing, Inc. , 859 N.W.2d at 851. Traditionally, the public-trust doctrine has been applied to the state's responsibility for managing public waters as a trustee for the public good. Id. No Minnesota case has directly addressed whether the public-trust doctrine encompasses a duty to manage groundwater-appropriation permits. Cf. id. at 852 (public-trust doctrine does not encompass a duty to manage fish or wildlife population); Larson , 508 N.W.2d at 787 (public-trust doctrine does not apply to land in outdoor recreation system); Aronow v. State , No. A12-0585, 2012 WL 4476642, at *2 (Minn. App. Oct. 1, 2012) (rejecting claims under public-trust doctrine because the doctrine does not apply to the atmosphere).[12]
We first consider appellants' argument that respondents' claims under MERA subsume its claims under the public-trust doctrine. Appellants argue that applying the public-trust doctrine would impede the DNR's efforts to manage the state's water, because statutes and rules already create a thorough framework for managing the state's water resources, and that decisions *366 on how to manage those resources are matters of public policy.
No Minnesota cases discuss the specific contention that the public-trust doctrine does not apply where a statutory right has been created, but we reject appellants' argument. MERA expressly provides that "[t]he rights and remedies provided herein shall be in addition to any administrative, regulatory, statutory, or common law rights and remedies now or hereafter available." Minn. Stat. § 116B.12. MERA and the public-trust doctrine may each apply in cases that concern the state's absolute title to navigable waters.
The district court's public-trust doctrine analysis is limited to its conclusion-with which we agree-that MERA does not preclude application of the public-trust doctrine here. Unexplained by the district court is its reasoning in applying the public-trust doctrine-which concerns the state's title to navigable waters-to groundwater.
In support of the district court's application of the doctrine to groundwater beyond the confines of the lake, respondents rely on cases from Arizona and California, primarily relying on Nat'l Audubon Soc'y v. Superior Court of Alpine Cty. , 33 Cal.3d 419, 189 Cal.Rptr. 346, 658 P.2d 709 (1983), which involved application of the doctrine not to groundwater but to non-navigable surface waters.[13] More significantly, we are bound to apply Minnesota law and not the law of other states. State by Ulland v. Int'l Ass'n of Entrepreneurs of Am. , 527 N.W.2d 133, 136 (Minn. App. 1995), review denied (Minn. Apr. 18, 1995).
Traditionally, the public-trust doctrine has been applied in Minnesota to protect navigable surface water and the "bed" below the surface water. Longyear , 29 N.W.2d at 665. The parties agree, and it is clearly the case, that the lake is "[s]ufficiently deep or wide to provide passage for [all or specified] vessels" and is a navigable water. The American Heritage Dictionary of the English Language 1176 (5th ed. 2011). But the common-law public-trust doctrine and its application in Minnesota has been limited to navigable waters like the lake and has never been extended to groundwater not directly beneath the lake.[14]
Here, respondents' claims concern much more than the lake and the lakebed. Respondents seek to remedy harm to the lake alleged to have resulted from the DNR's groundwater-appropriation permits. The subject of the claims here-and the relief ordered by the district court-pertains to groundwater-appropriation permits for wells located up to five miles away from the lake and its bed. Amicus City of Stillwater claims to have one of its *367 multiple municipal wells within the five-mile relief area beyond the lake shore; the well is just yards short of being five miles from the lake and, according to the city, draws groundwater from a different aquifer than the one hydrologically connected to White Bear Lake.
The district court's application of the public-trust doctrine to groundwater withdrawal remote from the lake and its bed conflicts with well-established Minnesota law that landowners own water and mineral rights underlying their property. In re Envtl. Assessment Worksheet for 33rd Sale of State Metallic Leases , 838 N.W.2d 212, 213 (Minn. App. 2013) (acknowledging that most surface and mineral rights are privately held), review denied (Minn. Nov. 26, 2013). Caselaw in Minnesota recognizes that groundwater is considered part of the public domain and not the sole property of a private landowner. Domtar, Inc. v. Niagara Fire Ins. Co. , 563 N.W.2d 724, 734 (Minn. 1997) ; Cargill, Inc. v. Evanston Ins. Co. , 642 N.W.2d 80, 90 (Minn. App. 2002). Minnesota follows a correlative-rights approach to groundwater, meaning that a landowner's right to groundwater is subject to reasonable use. Erickson v. Crookston Waterworks Power & Light Co. , 105 Minn. 182, 117 N.W. 435, 439 (1908) ( Erickson II ); Erickson v. Crookston Waterworks Power & Light Co. , 100 Minn. 481, 111 N.W. 391, 393-94 (1907) ( Erickson I ). Unlike lake water and the bed below it, the state has never been held to have absolute title to groundwater remote from a lake's bed. To extend the reach of the public-trust doctrine to groundwater would vest in the state "absolute title" in essentially all groundwater, and would run contrary to the entire history of Minnesota law concerning groundwater.
To be sure, the lake and the aquifer are hydrologically connected. That is why MERA applies to the groundwater. But that does not make groundwater "navigable." Precipitation also supplies water to the lake, but that fact does not make area rain barrels "navigable."
As an error-correcting court, it is beyond our authority to change the law. That power, if it is to be exercised by the judicial branch, is properly vested in the Minnesota Supreme Court. Larson v. Wasemiller , 738 N.W.2d 300, 303 (Minn. 2007) (stating that the Minnesota Supreme Court has the power to recognize and abolish common-law doctrines, while it is the province of the legislature to modify the common law); Lake George Park, L.L.C. v. IBM Mid-America Emps.' Fed. Credit Union , 576 N.W.2d 463, 466 (Minn. App. 1998) (explaining that the Minnesota Court of Appeals is an error-correcting court without authority to change the law), review denied (Minn. June 17, 1998); Stubbs v. N. Mem'l Med. Ctr. , 448 N.W.2d 78, 81 (Minn. App. 1989) (stating that it is not the function of this court to establish new causes of action), review denied (Minn. Jan. 12, 1990); Tereault v. Palmer , 413 N.W.2d 283, 286 (Minn. App. 1987) (explaining that the authority to create new law rests not with this court but in the legislature and supreme court), review denied (Minn. Dec. 18, 1987).
Applying established Minnesota law, we reverse the district court's application of the public-trust doctrine to respondents' claims.
Appellants raise several other arguments, including that the district court's factual findings are clearly erroneous and that several of the district court's remedies are erroneous or beyond the scope of legally available remedies. Because we reverse and remand on the application of Minn. Stat. § 116B.03 and reverse the district court's application of the public-trust *368 doctrine, we do not address those issues further.
DECISION
Minn. Stat. § 116B.10 provides the proper remedy for challenged actions taken pursuant to a DNR permit. Because the bar in Minn. Stat. § 116B.03 applies to permit-related claims under the Minnesota Environmental Rights Act, the district court erred by allowing respondents' claims to proceed under Minn. Stat. § 116B.03. Respondents asserted claims under chapter 116B.01 and have met their burden of a prima facie showing that DNR's permitting process is inadequate to protect White Bear Lake. Accordingly, we reverse and remand for the district court to remit the parties to administrative proceedings under Minn. Stat. § 116B.10, subd. 3, consistent with MERA and this opinion.
Because Minnesota has never applied the public-trust doctrine to groundwater beyond the confines of the boundaries of a lake and its bed, we reverse the district court's application of the public-trust doctrine to respondents' claims.
Reversed and remanded.
Dissenting, Bratvold, Judge

Appellants also challenge the district court's pretrial denial of dispositive motions, in which appellants argued-as they do on appeal-that this action should have proceeded under section 116B.10. Because this question is subsumed in the other issues raised in the appeal from the district court's judgment, we do not separately address it. See Minn. R. Civ. App. P. 103.03(a) (authorizing appeal in civil cases after entry of final judgment); see also Sterling State Bank v. Maas Commercial Props., LLC , 837 N.W.2d 733, 735 (Minn. App. 2013) (indicating that partial summary judgment is ordinarily not appealable, but can be challenged in a single appeal from final judgment that disposes of the litigation), review denied (Minn. Nov. 12, 2013).

The parties agree that relief is available under section 116B.10.

We observe in passing that, if section 116B.03 relief is available in this circumstance, then the multitude of certiorari appeals concerning mining permits, pipeline-construction permits, and the like will never be final so long as there is a person or entity with a district-court filing fee who can state a colorable claim to a district court that the agency permit allows the pollution, impairment, or destruction of natural resources. If respondents' construction of section 116B.03 is accepted, district courts will, in the future, be reviewing agency-issued environmental quality standards, licenses, permits, and the like and will be authorized to issue remedies outside of the ordinary administrative process established by the legislature. We cannot see in section 116B.03 such a disruptive and far-ranging authorization of the exercise of court jurisdiction.

As discussed below, we express no opinion concerning the appropriateness or the scope of interim equitable relief on remand, but note that the availability of such relief, coupled with the case being remitted to the agency, should suffice to both protect the lake during the process while remaining faithful to the clear legislative directives under MERA.

Minn. Stat. § 116B.10 contemplates that, once a MERA plaintiff has made a prima facie showing and the case has been remitted to the state agency, the agency's decision is subject to court review. Although the issue is not before us now, the statute seems to contemplate that the review is by the remitting district court. The statute permits the action to be maintained "in the district court." Minn. Stat. § 116B.10, subd. 1. In the absence of a statutory appeal procedure, we would typically have jurisdiction to review agency decisions by writ of certiorari. Minn. Stat. § 480A.06, subd. 3 (2018). At the time MERA was enacted by the legislature, the Minnesota Court of Appeals did not exist. See 1983 Minn. Laws, ch. 247, § 171, at 944. The legislature has not amended section 116B.10 since the creation of the Minnesota Court of Appeals, suggesting that review after the district court remits to an agency under that section remains for the district court.

Unpublished opinions are not precedential, Minn. Stat. § 480A.08, subd. 3 (2018), "but they may be persuasive." Kruse v. Comm'r of Pub. Safety , 906 N.W.2d 554, 559 (Minn. App. 2018).

In a related context, the Ninth Circuit Court of Appeals has recently expressly refrained from deciding whether that groundwater is a "navigable water." Hawai'i Wildlife Fund v. City of Maui , 886 F.3d 737 (9th Cir. 2018), cert. granted (U.S. Feb. 19, 2019) (No. 18-260). We note that the United States Supreme Court granted certiorari, but limited its grant of certiorari to a single issue. The question presented to the Supreme Court for review is whether the Clean Water Act requires a permit when pollutants originate from a point source but are conveyed to navigable waters by a nonpoint source, such as groundwater. The Supreme Court is not addressing the relevant aspect of the Ninth Circuit's opinion cited here-whether groundwater is a "navigable water."

We have no occasion to consider or address the question of whether the public-trust doctrine would extend to groundwater below the lake bed, because no extraction of groundwater from beneath the lake is permitted or contemplated. The existing groundwater extraction permits are for wells outside the boundaries of the lake and lake bed.